## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**vs.**                                           **Civ. No.  09-752 JCH/WPL**

**BILLY R. MELOT**
**KATHERINE MELOT,**
**KLM TRUST, C.D. PROPERTIES, INC.,**
**MELM TRUST, Q.F. MARKETING, INC.,**
**LEIGH CORPORATION, SUZANNE**
**CORPORATION, MIRROR FARMS, INC.,**
**and C.D. EXPRESS, INC.,**

**Defendants.**

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff United States of America's *Motion for Summary Judgment*, filed July 11, 2011 [Doc. 68].  The Court, having considered the motion, briefs, declarations, voluminous exhibits, arguments, and relevant law, and being otherwise fully informed, finds that the motion should be GRANTED in part and DENIED in part.

### BACKGROUND

The United States, via the Internal Revenue Service ("IRS"), filed the underlying action to reduce to judgment outstanding tax assessments against *pro se* Defendants Billy R. Melot and Katherine L. Melot ("Mr. and Ms. Melot") and to foreclose federal tax liens upon certain real and personal property owned by Mr. and Ms. Melot.  *See* Amended Complaint [Doc. 33] at 1, ¶ 1.  The trust and corporate Defendants named in the Amended Complaint are named because they hold title to property as a nominee/transferee or alter ego for the alleged real owners, Mr. and Ms. Melot.  *See id*. at 2-3, ¶¶ 5-12.  According to the Amended Complaint, Mr. Melot did not file tax returns for the tax years 1987 through 1993, despite earning significant income.  *Id.*

at 4, ¶ 13.  The Amended Complaint similarly alleges that Ms. Melot did not file tax returns for the tax years 1987 through 1993 and 1996.  *Id.* at 5, ¶ 16.  The IRS therefore prepared substitute tax returns on behalf of Defendants.  *Id.* at 4-5, ¶¶ 13, 16.  Mr. and Ms. Melot received notice and demand from a delegate of the Secretary of Treasury, but they still refused to pay the federal income tax assessments for the respective tax years.  *See id*. ¶¶ 14, 17.

On October 9, 2001, the IRS filed Notices of Federal Tax Lien for those federal income tax liabilities against Defendants in Lea County, New Mexico. *Id.* ¶¶ 15, 18.  The IRS has also assessed tax liabilities against Defendant Billy Melot d.b.a. Melot Oil Company for unpaid federal excise taxes and associated penalties and interest for tax periods ending in 1989 through 1991 and 1992 through 1993.  *Id*. at 6, ¶ 20.  On October 15, 2001, the IRS filed a Notice of Federal Tax Lien against Mr. Melot with regard to these liabilities in Bernalillo County, New Mexico.  *Id*. at 7,  ¶ 21.  On September 24, 2009, the IRS filed nominee Notices of Federal Tax Liens against the Defendant trusts and corporations in Lea County, New Mexico naming them as nominees, alter egos, transferees, agents, and/or holders of beneficial interests of Mr. Melot for his 1987-1993 federal income tax liabilities.  *Id*. at 8-12, ¶¶ 24, 26, 28, 30, 33, 35, and 37.  In all, the tax liens reflect an assessment of unpaid taxes, penalties, and interest in an amount exceeding $34 million.  *Id*. at 4-7, ¶¶ 14, 17, and 20.  The filed tax liens attach to any interest in Defendants' real and personal property.  *Id*. at 7, ¶ 22.

On April 22, 2010, a federal court jury convicted Mr. Melot on all 15 counts with which he was charged in a related criminal matter.  *See* No. 09-CR-2258-MCA (D. N.M.) at Doc. 79. The jury found Mr. Melot guilty of: (1) corruptly endeavoring to obstruct or impede the due administration of the Internal Revenue Code; (2) willfully attempting to evade the payment of federal income tax (with respect to tax years 1987-1993); (3) willfully failing to make income

tax returns for tax years 2003-2008; and (4) knowingly making false statements to the U.S.

Commodity Credit Corporation.  *See id*.  On August 30, 2011, Mr. Melot  received a sentence of

sixty months imprisonment.  *See* Doc. 208 in Case No. 09-CR-2258-MCA.

Defendants have previously moved to dismiss this case on the grounds that they were not

properly served, that Ms. Melot could not owe the taxes assessed against her because she had no

income for the periods covered by the assessments, that the liens against them were filed without

due process of law, and that the amount of assessments against them is incorrect.  *See* Docs. 7

and 8.  Defendants also moved to dismiss the case on the grounds that the tax assessments were

made after the applicable statute of limitations had run, *see* Docs. 49 and 52.  The Court has

previously denied these motions.  *See* Docs. 18 and 115.

In its motion, the Government has set forth the basis for its calculations of tax liability.

Defendants contend that several factual issues remain regarding the IRS agent's methodology,

the validity of the tax liens, and the Government's compliance with procedural requirements,

precluding summary judgment.  Defendants also contend that the Government has failed to

provide numerous documents requested in discovery.  The claims related to the alleged

discovery violations were analyzed and rejected in a recent opinion by Magistrate Judge Lynch,

and will not be further discussed here.  *See* Order Denying Defendants' Motion to Compel

Discovery, issued December 8, 2011 [Doc. 132].  Defendants objected to the Magistrate Judge's

Order denying their motion to compel, *see* Doc. 135, and the Court overruled this objection in an

Order issued contemporaneously with this Memorandum Opinion and Order.

## LEGAL STANDARD

Summary judgment is appropriate if "the record contains no evidence of a genuine issue

of material fact and demonstrates that the moving party is entitled to judgment as a matter of

law." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 247 (1986); *Woodman v. Runyon*, 132 F.3d

1330, 1337 (10th Cir. 1997); Fed. R. Civ. P. 56(c). The Court views the record and all

reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.

*Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 484 (10th Cir. 1995). The moving party has the initial

burden of showing that there is no genuine issue of material fact. *Anderson*, 477 U.S. at 256.

Once the moving party has met its burden, the non-moving party must do more than merely

show that there is some doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rest on mere allegations

or denials of the pleadings, but must set forth specific facts showing a genuine issue for trial.

*Anderson*, 477 U.S. at 248, 256. Although the Court views the evidence and draws all inferences

in the light most favorable to the party opposing summary judgment, that party still "must

identify sufficient evidence which would require submission of the case to a jury." *Mares v.*

*ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992). Unsupported allegations, conclusory

in nature, are insufficient to defeat a proper motion for summary judgment. *Anderson*, 477 U.S.

at 248.

## DISCUSSION

Six issues must be resolved in the Government's favor to enable it to foreclose on the

federal tax liens it has filed against Defendants' real property. The Court must determine

whether: (1) Mr. Melot is indebted to the United States for outstanding tax liabilities, including

penalties and interest assessed against him for the 1987-1993 tax years; (2) Ms. Melot is

indebted to the United States for outstanding tax liabilities, including penalties and interest

assessed against her for the 1987-1993 and 1996 tax years; (3) Mr. Melot is liable for excise

taxes related to his sales of blended gasoline; (4) the filed federal tax liens are properly attached

4

to Mr. and Ms. Melot's personal property and to the real property held by nominees; (5) the KLM Trust, Suzanne Corp., Leigh Corp., MELM Trust, and Mirror Farms are nominees merely holding title to real property for Mr. and Ms. Melot; and (6) whether the KLM Trust is a sham entity.  The Government's motion for summary judgment incorporates hundreds of pages of exhibits to meticulously document the basis for its tax assessments against Defendants and the propriety of the federal tax liens it has attached to Defendants' real and personal property. Below, the Court will cite the documents on which it is relying for its conclusions, and will address Defendants' objections to the Government's contentions.[1]

    A.  <u>Mr. Melot's Outstanding Tax Liabilities</u>

During the 1987-1993 tax years at issue, Mr. and Ms. Melot operated numerous businesses including several convience stores that engaged in the retail sale of gasoline and groceries in Hobbs, New Mexico, and the Permian Basin of Texas.  Declaration of Revenue Agent Denise Baker ("Baker Dec."), attached as Govt. Ex. 4, ¶¶ 2 and 3.[2]  Through these businesses, Mr. Melot earned significant income requiring him to file federal income tax returns. *Id.*  Yet, neither Mr. nor Ms. Melot  filed federal income tax returns for the 1987-1993 years.  *Id.* Accordingly, the IRS prepared substitute for returns on behalf of Mr. and Ms. Melot by

---

[1] Defendants' Response to Plaintiff's Motion for Summary Judgment [Doc. 113] includes numerous exhibits.  Defendants filed a motion seeking to expand the page limits for exhibits. [Doc. 112].  Although Defendants characterized this motion as "opposed," they did not cite the nature of the Government's opposition, nor did the Court receive any filing from the Government opposing Defendants' motion.  The Court previously granted a motion by the Government seeking leave to file excess exhibits related to its motion for summary judgment, *see* Doc. 89.  The Court hereby also grants Defendants' motion to expand the page limits for exhibits related to their Response.

[2] Unless otherwise noted, "Govt. Ex." refers to exhibits attached by the Government to its Motion for Summary Judgment.

reconstructing their income and expenses.  *Id*., *¶ 3*.  In addition to failing to file federal income tax returns for the 1987-1993 tax years, Mr. and Ms. Melot also failed to make any estimated tax payments for those years.  *See* Govt. Ex. 1 at 2, 7, 11, 15, 19, 23 and 27.

       The IRS used a combination of methods to reconstruct and determine the amount of the Melots' total gross income, expenses, cost of goods sold, capital gains, wages, and appropriate inclusions of income and deductions therefrom based in part on the Melots' own handwritten ledgers, bank deposits and other third party records. The details of this methodology are described in the Baker Declaration at paragraphs 6, 7, 9,10, 12 and 13.  Using this methodology, the IRS calculated the corrected tax liabilities, additions to tax, and penalties for Mr. Melot's 1987-1993 tax years.  *Id.*

       Based on the results of this examination, the IRS issued three separate Statutory Notices of Deficiency for the 1987-1993 tax years to Mr. Melot reflecting the examination results.  *See id*.  ¶¶ 7, 10, and 13.  Mr. Melot failed to petition the United States Tax Court to contest any of the tax liabilities as calculated for the 1987-1993 tax years.  *See id*. ¶¶ 7d., 10d., and 13d.  On June 5, 2000, the IRS assessed the total corrected tax liabilities, penalties, and additions to tax as set forth in the Notices of Deficiency against Mr. Melot.  *See* Govt. Ex. 1 at 2, 7, 11, 15, 19, 23, and 27.  These assessments reflected a corrected tax liability, failure to file penalties, and failure to pay estimated tax penalties for the 1987-1993 tax years totaling $4,604,754.  *See* Govt. Ex. 5 at 1, 5, and 6; Govt. Ex. 6 at 1, 5, and 6; Govt. Ex. 7 at 1, 5, and 6.  To date, Mr. Melot has failed to pay the tax assessments, resulting in a total amount due, when failure to pay penalties and statutory interest are added, of $18,493,098.51 as of August 11, 2009.  *See* Baker Dec. at ¶ 15; Govt. Ex. 12.

       On October 9, 2001, the IRS filed a Notice of Federal Tax Lien with the County Clerk of

Lea County, New Mexico with respect to Mr. Melot's federal income tax liabilities. *See* Govt. Ex. 16 at 1. On or about October 12, 2001, Mr. Melot received notice from the IRS that federal tax liens had been filed against him for the 1987-1993 tax years, and a breakdown of the amounts due. *See* Govt. Ex. 14. Mr. Melot responded to this notice with numerous pages of thoroughly discredited tax protestor arguments, including assertions that the income tax laws are unconstitutional and therefore he cannot be liable for such taxes. *Id.* This response was in keeping with other correspondence sent by Mr. Melot regarding his tax liability in which he declared that he did not owe any money because he is not a citizen subject to the jurisdiction of the United States and is not required to file income tax returns. *See, e.g.,* Govt. Ex. 45 (August 31, 1999 letter to District Director of IRS declaring that he incurred no liability in 1986 or any years after that, and does not anticipate incurring a liability in future years, so there is no need to contact him further regarding the taxes he allegedly owes). On October 5, 2009, the federal tax liens for Mr. Melot's 1987-1993 income tax liabilities were re-filed in Lea County, New Mexico. *See* Govt. Ex. 16 at 3.

Mr. Melot challenges the Government's assessments of his tax liabilities, contending that the methodology used by Agent Baker to reconstruct his income and associated tax liability was flawed. *See* Defendants' Response to Plaintiff's Motion for Summary Judgment (hereinafter "Deft. Resp.") [Doc. 113] at 6-8, 13-14. However, a taxpayer has the duty to maintain adequate and accurate records to enable him to file a tax return. *See* 26 U.S.C. § 6001; *Anson v. Comm'r*, 328 F.2d 703, 705 (10th Cir. 1964). If the taxpayer fails to file returns or keeps inadequate records or no records at all, the IRS is entitled to reconstruct the taxpayer's gross receipts and costs to arrive at an assessment of unreported income. *See Anaya v. Comm'r*, 983 F.2d 186, 188 (10th Cir. 1993). The IRS issued Forms 4340 Certificate of Assessments and Payments,

showing these assessments against Mr. Melot for the 1987-1993 tax years.  *See* Govt. Ex. 1.

Forms 4340 are presumptively correct and are entitled to great weight absent evidence to the

contrary.  *See Long v. United States*, 972 F.2d 1174, 1181 (10th Cir. 1992).

Mr. Melot has failed to produce any specific facts tending to demonstrate that Agent

Baker's calculations leading to the IRS's assessments were incorrect, despite having multiple

opportunities to do so.  The same methodology that the IRS used to determine the amount of tax

liability and penalties for the years at issue was also used to determine the tax loss and restitution

amount in Mr. Melot's associated criminal trial.  *See* Govt. Ex. 55 (transcript of sentencing) at

42-43 (ordering Mr. Melot to pay $18,493,098 in restitution to the IRS, the same total that the

IRS is alleging in this suit that Mr. Melot owes for the 1987-1993 tax years).[3]  In his objections

to the pre-sentence report and at his sentencing hearing, Mr. Melot raised similar arguments and

complaints about Agent Baker's methodology and calculations.  *See* Govt. Ex. 54 (Defendant's

Amended Objections to the Pre-sentence Investigative Report) at 1, 7.  At Mr. Melot's

sentencing, the District Court overruled his objections and found that Agent Baker's

methodology used to calculate the amount of taxes owed by Mr. Melot was reasonable under the

circumstances, that the methodology was not based on speculation or conjecture, and that the

calculation of taxes owed for the 1987-1993 tax years was correct.  *See* Govt. Ex. 55 at 6-16.

The District Court specifically found that the certified transcripts admitted at Mr. Melot's

---

[3] Defendants contend that, if this Court enters summary judgment on behalf of the IRS in this case, he will be forced to pay the $18,493,098 assessment twice, as he has already been ordered to do so by the District Court in his associated criminal case.  *See* Deft. Resp. [Doc. 113] at 17.  However, this civil case is only an attempt to reduce the liens to judgment to enable the United States to collect the money it is owed.  To the extent that it collects a portion of the outstanding taxes due through foreclosing on its liens, that would reduce the amount that could be collected under the restitution order accordingly.

criminal trial were sufficient to establish the propriety of the 1987-1993 tax assessments because Mr. Melot presented no credible evidence during his trial or sentencing hearing that contradicted the validity of the assessments. *See id*. at 8:1-16. Similarly, in this case, Mr. Melot has not presented evidence to overcome the presumption of correctness attached to the IRS's Certificates of Assessments and Payments, and the Government's motion for summary judgment on this count must be granted.

      B.    <u>Ms. Melot's Outstanding Tax Liabilities</u>

          1.   <u>1987-1993 Tax Years</u>

Because Ms. Melot was married to Mr. Melot during the years at issue, and because New Mexico is a community property state, the IRS determined Ms. Melot's federal income tax liabilities on a community property split basis. Thus, the IRS attributed a portion of the income earned by Mr. Melot during the 1987-1993 tax years to Ms. Melot. Like Mr. Melot, Ms. Melot failed to file federal income tax returns for the 1987-1993 tax years. As previously discussed, the IRS therefore prepared substitute returns on behalf of Ms. Melot as well as Mr. Melot, using a combination of methods to reconstruct the Melots' gross income and deductible expenses. *See* Govt. Ex. 2 at 2, 6, 10, 14, 18, 22, 26; Baker Dec. (Govt. Ex. 4) at ¶¶ 2, 3, 19-27.

Based on the results of this examination, the IRS issued three separate Statutory Notices of Deficiency for the 1987-1993 tax years to Ms. Melot reflecting the examination results. *See* Baker Dec. ¶¶ 20, 23, and 26. Ms. Melot failed to petition the United States Tax Court to contest any of the tax liabilities as calculated for the 1987-1993 tax years. *See id*. ¶¶ 20d., 23d., and 26d. On June 5, 2000, the IRS assessed the total corrected tax liabilities, penalties, and additions to tax as set forth in the Notices of Deficiency against Ms. Melot. *See* Govt. Ex. 2 at 2, 6, 10, 14, 18, 22, 26. These assessments reflected a corrected tax liability, failure to file

penalties, and failure to pay estimated tax penalties for the 1987-1993 tax years totaling $2,338,500. *See* Govt. Ex. 8 at 1, 5, and 6; Govt. Ex. 9 at 1, 5, and 6; Govt. Ex. 10 at 1, 5, and 6. Ms. Melot failed to pay the tax assessments, resulting in a total amount due, when failure to pay penalties and statutory interest are added, of $5,025,090.78 as of October 1, 2001. *See* Govt. Ex. 18. With years of additional statutory interest, Ms. Melot's tax liability for the 1987-1993 tax years is now estimated to be approximately $9.3 million as of March 31, 2009. *See* Amended Complaint [Doc. 33] at 5 ¶ 17.

On October 9, 2001, the IRS filed a Notice of Federal Tax Lien with the County Clerk of Lea County, New Mexico with respect to Ms. Melot's federal income tax liabilities. *See* Govt. Ex. 18 at 1. On or about October 12, 2001, Ms. Melot received notice from the IRS that federal tax liens had been filed against her for the 1987-1993 tax years, and a breakdown of the amounts due. *See* Govt. Ex. 15. Ms. Melot responded to this notice with numerous pages of thoroughly discredited tax protestor arguments, including assertions that the income tax laws are unconstitutional and therefore she cannot be liable for such taxes. *Id*. This response was in keeping with other correspondence sent by Ms. Melot regarding his tax liability in which she declared that she did not owe any money because she is not a citizen subject to the jurisdiction of the United States and is not required to file income tax returns. *See, e.g.,* Govt. Ex. 46 (August 31, 1999 letter to District Director of IRS declaring that she incurred no liability in 1986 or any years after that, and does not anticipate incurring a liability in future years, so there is no need to contact her further regarding the taxes she allegedly owes). On July 27, 2009, the federal tax liens for Ms. Melot's 1987-1993 income tax liabilities were re-filed in Lea County, New Mexico. *See* Govt. Ex. 18 at 2, 3, and 4.

Ms. Melot challenges the Government's assessment of her 1987-1993 taxes on the same

basis that Mr. Melot challenged his assessment; namely that Agent Baker's methodology was flawed.  As previously discussed, Defendants have not presented evidence to call this methodology into question or to overcome the presumption of correctness that attaches to the IRS's Certificates of Assessments and Payments.  Therefore, the Government's motion for summary judgment with respect to Ms. Melot's 1987-1993 tax assessments must be granted.

2.      1996 Tax Year

The United States has submitted a Form 4340 Certificate of Assessment for Ms. Melot's 1996 tax year, showing a total amount due, when failure to pay penalties and statutory interest are added, of $4,050.87.  *See* Govt. Ex. 2 at 30-33.  With years of additional statutory interest, Ms. Melot's tax liability for the 1996 tax year is estimated to be approximately $6,742 as of March 31, 2009.  *See* Amended Complaint [Doc. 33] at 5 ¶ 17. However, Defendants have raised several concerns related to the validity of this assessment.  Most importantly, it is not clear what the basis of this assessment is.  Unlike all of the other assessments at issue in this case, the Government has not submitted work papers or explained the methodology behind this assessment.  Viewing the evidence in the light most favorable to the non-movants, the Court must deny Plaintiff's motion on this issue.

Defendants have submitted a Certificate of Assessment for Mr. Melot's 1996 tax year showing a zero balance.  *See* Deft. Ex. B.  As Ms. Melot's federal income tax liability for the 1987-1993 years was based on a community property split with her husband, it is unclear what the basis of her assessment is if Mr. Melot has a zero balance for 1996.  The Sentencing Memorandum submitted by the United States in Mr. Melot's associated criminal trial indicates that the United States does not have records to determine Mr. Melot's federal tax liability from 1994 to 2010.  *See* Deft. Ex. D.  Given this lack of records, it is unclear what records the United

11

States is relying on to form the basis for its assessment against Ms. Melot for the 1996 tax year. Significantly, Agent Baker's thorough declaration and associated exhibits, laying out the basis for all assessments against Defendants, contains no discussion of Ms. Melot's 1996 tax year. *See* Govt. Ex. 4 ¶¶ 16-27 (discussing only the basis for Ms. Melot's assessments for the 1987-1993 tax years).  In addition, although a Notice of Federal Tax Lien was filed in Lea County on October 9, 2001 with respect to Ms. Melot's 1987-1993 and 1996 taxes, when these liens were later re-filed in 2009 and 2010, they did not include assessments for 1996.  *See* Govt. Ex. 18.

Because this assessment does not bear the same indicia of reliability as all of the other assessments at issue in this case, out of an abundance of caution the Court will deny summary judgment with respect to Ms. Melot's liability for her 1996 tax assessment only.  This assessment reflects a tiny fraction of the total amount assessed against Defendants, and, as a practical matter, should have no impact on the United States' ability to foreclose on all of its other liens.  The Court directs Plaintiff to inform the Court as to whether it wishes to proceed to trial on this sole remaining issue.

C.    Excise Taxes

During the years in question, Mr. Melot operated a sole proprietorship known as Melot Oil Company.  *See* Govt. Ex. 13 at 2-3.  This business was engaged in the buying, selling, blending, and distributing of gasoline and diesel fuel.  *Id.*  In operating this business, Mr. Melot purchased natural gasoline, blended it with additives and octane boosters, and sold the finished product through his gas stations.  *Id* at 1-3.  Internal Revenue Code § 4081 imposes an excise tax on gasoline sold by the producer thereof, and such a producer is required to file Form 720 tax returns.  Mr. Melot failed to file Forms 720 or to pay the excise taxes due for quarterly tax periods in 1989-1993.  The IRS therefore reconstructed the sales of gasoline from Melot Oil

12

Company for those periods, and filed substitute Forms 720 accordingly.  *See id*. at 1, 8-15; Govt. Ex. 3.  The IRS assessed against, and gave notice and demand to, Billy Melot d/b/a Melot Oil Company for unpaid federal excise taxes, penalties, statutory additions, and interest.  *See* Govt. Ex. 3.

In support of its motion for summary judgment, the United States submitted forms 4340 Certificates of Assessments and Payments evidencing the assessments made against Melot Oil Company for the excise tax quarters ending 3/31/1989-3/31/1991 and 3/31/1992-12/31/1993.  At the time of assessment on December 20, 1999, Billy Melot d/b/a/ Melot Oil Company owed $3,414,412.93 in excise taxes, penalties, statutory additions, and interest.  *See id*. at 2, 6, 9, 12, 15, 18, 21, 24, 27, 30, 33, 36, 39, 42, 45, 48, and 50.  With years of additional statutory interest, the excise tax assessments owed by Billy Melot d/b/a/ Melot Oil Company now approximate $6.6 million as of March 31, 2009.  *See* Amended Complaint [Doc. 33] at 6-7 ¶ 20.

Mr. Melot challenges the IRS's assessment of excise taxes as "a conglomeration of questionable assumptions" and "little other than speculation as to the underlying tax liability." Deft. Resp. [Doc. 113] at 14.  Mr. Melot also contends that, because he was not convicted on state criminal charges in Texas that may have been related to the gasoline at issue in this case, he cannot be liable for federal excise taxes.  *Id*.  The District Court at Mr. Melot's sentencing hearing overruled these objections.  *See* Govt. Ex. 55 at 20:15-21:3.  Whether or not Mr. Melot owes taxes to the State of Texas does not determine the validity of the assessment of federal excise taxes against his business.[4]  As with Mr. and Ms. Melot's individual income taxes, the

---

[4] Incidently, at Mr. Melot's sentencing hearing, the District Court recognized that Texas' Comptroller reflects Mr. Melot as currently owing approximately $7,675,000 in unpaid taxes to the State of Texas.  *See* Govt. Ex. 55 at 20.

Forms 4340 Certificates of Assessments and Payments reflecting the assessed excise taxes are presumptively correct and entitled to great weight absence evidence to the contrary. The United States has produced detailed work papers and calculations of these excise taxes due. *See* Govt. Exs. 3, 13. Mr. Melot has failed to produce any evidence to rebut the IRS's calculations and assessments, either as part of this case or in connection with his sentencing in his related criminal case. Thus, summary judgment must be granted on this count.

      D.    <u>Federal Tax Liens</u>

      If a person fails or refuses to pay a federal tax owed after proper demand is made, a tax lien is created that attaches to all of that person's property and rights to property, real or personal, owned on the assessment date or acquired thereafter. 26 U.S.C. § 6321; *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719 (1985). Even if property to which a section 6321 lien attaches is subsequently transferred, the lien is not affected because the property passes with the lien attached. *See United States v. Cache Valley Bank*, 866 F.2d 1242, 1245 (10th Cir. 1989). A lien imposed by section 6321 arises automatically at the time of tax assessment, and remains in place until the liability is satisfied or until it becomes unenforceable by lapse of time. *See* 26 U.S.C. § 6322. In general, the statute of limitation on collection expires ten years after the date of assessment, however, "if a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax is satisfied or becomes unenforceable." 26 U.S.C. § 6502(a). The IRS assessed 1987-1993 taxes against Mr. and Ms. Melot on June 5, 2000. Therefore, although the statute of limitations on collection would have run on June 5, 2010 absent action by the United States, on July 31, 2009, the United States filed this present suit to reduce to judgment the Melots' 1987-1993 tax assessments. *See* Complaint [Doc. 1].

Accordingly, the statute of limitations on collection has not expired.

Mr. and Ms. Melot own a significant amount of personal and real property, either outright or as beneficiaries through trust or corporate entities. *See* Govt. Ex. 47 (rough inventory of real and personal property owned by Melots). Most significant among the Melots' holdings are five pieces of real property located in Hobbs, New Mexico, all held through nominee trusts and corporations: (1) a house and acreage located at 2805 E. Rose Road; (2) two small tracts of land bordering the 2805 E. Rose property; (3) a 160 acre farm located along Johnson Road; (4) a 13 acre horse barn property located along E. Lovelady Road; and (5) a commercial property located at 321 E. Sanger Street. *See* Deft. Resp. [Doc. 113] at 5 (Defendants' Statement of Undisputed Material Facts).

In this case, the United States seeks to foreclose on the tax liens it has against the Melots' properties, including the properties held in the names of nominees. The IRS may satisfy a tax deficiency by imposing a lien on any property or rights to property that belong to the delinquent taxpayer. *See Drye v. United States*, 528 U.S. 49, 55 (1999) (quoting 26 U.S.C. § 6321). Because "Congress meant to reach every interest in property that a taxpayer might have," the terms "property" and "rights to property" include "not only property and rights to property owned by the taxpayer but also property held by a third party if it is determined that the third party is holding the property as a nominee...of the delinquent taxpayer." *Holman v. United States*, 505 F.3d 1060, 1065 (10th Cir. 2007) (citations omitted). In determining whether the IRS can proceed against property held by a nominee, the Court "focuses upon the taxpayer's relationship to a particular piece of property" and "[t]he ultimate inquiry is whether the taxpayer has engaged in a legal fiction by placing legal title to property in the hands of a third party while actually retaining some or all of the benefits of true ownership." *Id.* In evaluating nominee

15

questions, the Court looks at six factors: "(1) whether inadequate or no consideration was paid

by the nominee; (2) whether the property was placed in the nominee's name in the anticipation

of a lawsuit or other liability while the transferor remains in control of the property; (3) whether

there is a close relationship between the nominee and the transferor; (4) whether they failed to

record the conveyance; (5) whether the transferor retained possession; and (6) whether the

transferor continues to enjoy the benefits of the transferred property." *Id.* (quoting *Spotts v.*

*United States*, 429 F.3d 248, 253 n.2 (6th Cir. 2005).  Using these factors, as described further

below, the Court concludes that the United States is entitled to foreclose upon the tax liens

securing real property held for the Melots by nominees.

### 1.  House and acreage located at 2805 E. Rose Road

The house and acreage located at 2805 E. Rose Road, owned by Mr. and Ms. Melot, but

titled in the name of Suzanne Corporation, consists of approximately 96 acres on which their

home is located.  *See* Govt. Ex. 35 at 1 (escrow contract for property); Govt. Ex. 34 at 1.  The

2805 E. Rose property is fully described in the escrow contract.  *See* Govt. Ex. 35 at 1.  On

March 15, 1994, Mr. and Ms. Melot purchased the 2805 E. Rose property in the name of

Suzanne Corporation. *See* Govt. Ex. 35 at 11.  At the time of this purchase, Mr. and Ms. Melot

were already under an IRS audit, which began in April of 1992.  *See* Govt. Ex. 4. at 1 ¶ 2.  Mr.

and Ms. Melot were aware that they were under audit at the time they purchased this property, as

Agent Baker first interviewed Mr. Melot in May of 1992.  *Id.* at 2 ¶ 4.

In signing the escrow contract for the property, Mr. and Ms. Melot agreed individually to

be personally responsible for money due under the escrow agreement.  Govt. Ex. 35 at 11.

Mr. Melot personally paid the property taxes on the 2805 E. Rose property.  *See* Govt. Ex. 34

at 2-3.  Mr. Melot also paid the property taxes on the 2805 E. Rose property through his

nominee trust, KLM.[5]  *Id.*  Suzanne Corp. never made any property tax payments on the 2805 E.

Rose Property. *Id.*  According to its Articles of Incorporation, Mr. and Ms. Melot are the

directors of Suzanne Corp.  *See* Govt. Ex. 37.  However, Suzanne Corp. is a non-filing entity and

is not registered to do business in the state of New Mexico.  *See* Govt. Ex. 36.

The arrangement to have Suzanne Corp. hold title to the 2805 E. Rose property

implicates several of the factors that the Court looks at to determine whether the taxpayer has

engaged in a legal fiction.  The purchase by Suzanne Corp. was made at a time that the Melots

knew they were under investigation for unpaid taxes and must have known that they would incur

staggering tax liabilities as they had failed to file tax returns since 1987 despite earning

significant income.  Thus, the property appears to have been placed in the name of Suzanne

Corp. in anticipation of a suit or incurrence of liabilities.  Moreover, an extremely close

relationship exists between the transferor and the nominee.  The Melots are the directors of

Suzanne Corp., and Suzanne Corp. does not appear to have independent significance, as it has

never filed federal tax returns and is not registered to conduct business in New Mexico.  The

Melots signed the contract to purchase the property, personally guaranteed payment of the

contract, and have personally paid property taxes on the property.  Finally, the Melots have

retained possession of the property and they continue to enjoy the benefits of the property, as it

remains their home address.  *See, e.g.,* Deft. Resp. [Doc. 113] at 18 (listing 2805 E. Rose Road

as Defendants' address).  Thus, it appears that Defendants have "engaged in a legal fiction by

placing legal title to property in the hands of a third party while actually retaining some or all of

the benefits of true ownership," *Holman*, 505 F.3d at 1065, and the IRS can proceed against the

---

[5] Later in this Memorandum Order and Opinion, the Court will address why the actions
of KLM Trust should be treated as the actions of Mr. and Ms. Melot.

2805 E. Rose property.[6]

On September 24, 2009, two nominee Notices of Federal Tax liens were filed in the Lea County real property records against Suzanne Corp., as nominee of Billy and Katherine Melot, each for their separate 1987-1993 income tax liabilities. *See* Govt. Ex. 20, at 1, 3. This tax lien was re-filed on October 5, 2010. *See id*. at 5. The United States is entitled to foreclose on these tax liens related to the 2805 E. Rose property.

   2. <u>Tracts # 3 and #4</u>

In 1996, Mr. Melot purchased five tracts of property located in Lea County, New Mexico at a bankruptcy sale through a corporation named Leigh Corporation. *See* Govt. Ex. 23 at 5, 6. The property purchased through Leigh Corp. is referred to throughout the United States' filings as Tracts #1, #2, #3, #4 and #5. Tracts #3 and #4 are strips of land, .81 and 3.01 acres, respectively, bordering the 2805 E. Rose property, and providing access to the Melots' 13 acre horse barn property. *See* Govt. Exs. 23, 24, and 25. Tracts #3 and #4 are fully described in the purchase agreement, Govt. Ex. 23 at 6, and in the Lea County Assessment Reports, Govt. Exs. 24 and 25.

As in the case of the 2805 E. Rose property, Mr. Melot personally paid the property taxes on Tracts #3 and #4. *See* Govt. Exs. 24 and 25. Mr. Melot also paid the property taxes on Tracts #3 and #4 through his nominee trust, KLM. *Id.* Leigh Corp. never made any property tax payments on Tracts #3 and #4. *Id.* Leigh Corporation's address is the same as the Melots' home

---

   [6] In Mr. Melot's related criminal case, Counts 1 and 2 of the Indictment set forth his use of nominees to conceal the ownership of assets to willfully attempt to evade the payment of federal income tax with respect to the 1987-1993 tax years, including the titling of the 2805 E. Rose property in the name of Suzanne Corp. *See* Indictment, attached as Govt. Ex. 52, ¶¶ 5, 12. Mr. Melot was convicted of these Counts. *See* Govt. Ex. 53.

address, 2805 E. Rose Rd.  *Id.*  As with Suzanne Corp., Leigh Corp. is a non-filing entity and is not registered to do business in the state of New Mexico.  *See* Govt. Ex. 43.

An extremely close relationship also exists between the Melots and the nominee corporation holding title to Tracts #3 and #4.  Leigh Corp. does not appear to have independent significance, as it has never filed federal tax returns and is not registered to conduct business in New Mexico.  The Melots have been paying property taxes on the property.  They have also retained possession of the property and continue to enjoy the benefits of the property, as it is connected to the 2805 E. Rose property and provides access to their horse barn property.  The use of Leigh Corp. as a nominee to conceal the ownership of Tracts #3 and #4 to willfully attempt to evade the payment of federal income tax with respect to the 1987-1993 tax years was part of the basis for Counts 1 and 2 on which Mr. Melot was convicted in his associated criminal trial.  *See* Govt. Ex. 52, ¶¶ 5, 13, 52.  Thus, it appears that Defendants have "engaged in a legal fiction by placing legal title to property in the hands of a third party while actually retaining some or all of the benefits of true ownership," *Holman*, 505 F.3d at 1065, and the IRS can proceed against Tracts #3 and #4.

On September 24, 2009, a nominee Notice of Federal Tax lien was filed in the Lea County real property records against Leigh Corp., as nominee of Billy Melot for his 1987-1993 income tax liabilities.  *See* Govt. Ex. 21 at 1.  This tax lien was re-filed on October 5, 2010.  *See id.* at 4.  The United States is entitled to foreclose on this tax lien related to Tracts #3 and #4.

### 3.  160 Acre Farm on Johnson Road (Tracts #1 and #2)

Tracts #1 and #2 acquired by the Melots through the Leigh Corporation in the 1996 bankruptcy sale form a 160 acre farm along Johnson Road, across the street from the Melots' 2805 E. Rose property.  *See* Govt. Ex. 23 at 5, 6; Govt. Exs. 26 and 27.  Tracts #1 and #2 are

fully described in the purchase agreement, Govt. Ex. 23 at 6, and in the Lea County Assessment Reports, Govt. Exs. 26 and 27.  Mr. Melot personally paid the property taxes on Tracts #1 and #2.  *See* Govt. Exs. 26 and 27.  Mr. Melot also paid the property taxes on Tracts #1 and #2 through his nominee trust, KLM.  *Id.*  Leigh Corp. never made any property tax payments on Tracts #1 and #2.  *Id.*  As previously discussed, Leigh Corp. is a non-filing entity and is not registered to do business in the state of New Mexico.  *See* Govt. Ex. 43.

On March 31, 2003, Leigh Corp. transferred the 160 acre property to KLM Trust for no consideration.  *See* Govt. Ex. 28.  At his trial, Mr. Melot admitted that he forged the signature of Carla Self, the nominal president of Leigh Corp., on the deed transferring the property to the KLM Trust.  Govt. Ex. 51 at 61:17-62:15.  Mr. Melot contended that he felt he did not need Ms. Self's signature on the transfer deed because "it's just going from my company to my company." *Id*. at 62:14-15.  This testimony, in addition to the fact that he transferred the property for no consideration, indicates that there was an identity of interest between the transferor and the nominee.  This indication is strengthened by the fact that Mr. and Ms. Melot, individually as landlords, rather than through the KLM Trust, leased 120 acres of the farm to a farmer.  *See* Govt. Ex. 49.

Defendants argue that the KLM Trust is an entity that is not subject to federal tax collection because the law permits the creation of the Trust, the Trust has economic substance and is not a sham, and it was not created for the purpose of avoiding taxes.  *See* Deft. Resp. at 15-16.  The facts as established by the United States, and uncontested by Defendants, belie this contention.  The Melots received notice of a federal tax lien on October 12, 2001.  *See* Govt. Ex. 14.  Shortly thereafter, on November 28, 2001, Mr. Melot set up the KLM Trust.  *See* Govt. Ex. 30 (KLM Trust Creation Document) at 39.

Mr. Melot is the settlor of the KLM Trust.  *Id*. at 39-40.  He had a power of attorney for the Trust.  *See* Govt. Ex. 31.  Although his son was named as trustee, he was only seventeen years old when the Trust was established.  *See* Govt. Ex. 33 (Drivers License record listing Bill Melot Jr. as under 21 until April 2005).   By the explicit terms of the Trust, Mr. Melot is the protector of the Trust and he can replace the trustee at any time.  *See* Govt. Ex. 30 at 39.   At his criminal trial, Mr. Melot admitted that he had control over his son's decisions.  Govt. Ex. 51 at 55:7-17.  Not only did Mr. Melot control the KLM Trust as a practical matter, but in federal documents he also held himself out as the trustee of the Trust.  *See* Govt. Ex. 29 at 5-6.  As with Suzanne Corp. and Leigh Corp., the KLM Trust's address is listed as 2805 E. Rose Rd., Govt. Ex. 30 at 1, the Trust is a non-filing entity, and it is not registered to do business in the state of New Mexico.  *See* Govt. Ex. 32.

The KLM Trust appears to lack economic substance, as, contrary to Defendants' arguments, it does not have an independent trustee nor does it impose substantial restrictions on the trustee's use of trust property.  After transferring the 160 acre farm from Leigh Corp. to the KLM Trust, the Melots have retained possession of the property and continue to enjoy the benefits of the property, including personally collecting rent for its use.  The use of Leigh Corp. and then the KLM Trust as nominees to conceal the ownership of Tracts #1 and #2 to willfully attempt to evade the payment of federal income tax with respect to the 1987-1993 tax years was part of the basis for Counts 1 and 2 on which Mr. Melot was convicted in his associated criminal trial.  *See* Govt. Ex. 52, ¶¶ 5, 32, 52.  Thus, the IRS can proceed against Tracts #1 and #2.

On September 24, 2009, two nominee Notices of Federal Tax liens were filed in the Lea County real property records against the KLM Trust, as nominee of Billy and Katherine Melot, each for their separate 1987-1993 income tax liabilities.  *See* Govt. Ex. 42, at 1, 3. These tax

liens were re-filed on October 5, 2010.  *See id.* at 5, 7.  The United States is entitled to foreclose on these tax liens related to the 160 acre farm on Johnson Rd. (Tracts #1 and #2).

### 4.  13 Acre Horse Barns Property

In November of 1999, Mr. Melot, through Mirror Farms, Inc., purchased a property consisting of more than 13 acres with horse barns located along E. Lovelady Road.  *See* Govt. Exs. 40, 41.  The 13 acre horse barn property is described fully in the deed attached as Govt. Ex. 41.  Similar to other of the Melots' properties, Mr. Melot personally paid the property taxes on the horse barns property.  *See* Govt. Ex. 40 at 3.  Mr. Melot also paid the property taxes on the horse barns property through the KLM Trust.  *Id.*  Mirror Farms, Inc. never made any tax payments on the property.  *Id.*  In addition, Mirror Farms, Inc.'s address is the same as the Melots' home address, 2805 E. Rose Rd.  *Id.*  For the same reasons discussed with respect to other of the Melots' properties titled in the names of nominees, the United States can proceed against the 13 acre horse barn property.

On September 24, 2009, a nominee Notice of Federal Tax Lien was filed in the Lea County real property records against Mirror Farms, Inc., as nominee of Billy Melot, for his 1987-1993 federal income tax liabilities.  *See* Govt. Ex. 19 at 2.  On October 5, 2010, this tax lien was re-filed in the Lea County property records.  *Id.* at 4.  The United States is entitled to foreclose on this tax lien related to the 13 acre horse barn property.

### 5.  321 E. Sanger Street Commercial Property

In December of 2000, Mr. Melot, in his personal capacity, entered into an agreement to purchase the 321 E. Sanger property from ADCO Marketing.  *See* Govt. Ex. 39 at 1, 9, 10.  The 321 E. Sanger property is described fully in the Warranty Deed.  *Id.* at 12.  Shortly thereafter, Mr. Melot caused the 321 E. Sanger property to be titled in the name of another nominee entity,

22

C.D. Express, Inc.  *Id*. at 12.  C.D. Express, Inc. is a non-filing entity.  *See* Govt. Ex. 48.  In 2004, C.D. Express, Inc. transferred the 321 E. Sanger property to the MELM Trust for no consideration.  *See* Govt. Ex. 39 at 13.

Similar to other of the Melots' properties, Mr. Melot personally paid the property taxes on the 321 E. Sanger property.  *See* Govt. Ex. 44 at 3.  Mr. Melot also paid the property taxes on the 321 E. Sanger property through the KLM Trust.  *Id.*  Neither C.D. Express, Inc. nor the MELM Trust ever made any tax payments on the property.  *Id.*  In addition, the MELM Trust's address is the same as the Melots' home address, 2805 E. Rose Rd.  *Id.*  For the same reasons discussed with respect to other of the Melots' properties titled in the names of nominees, Mr. Melot appears to be the true beneficial owner of the property, and the United States can proceed against the 321 E. Sanger property.

On September 24, 2009, a nominee Notice of Federal Tax Lien was filed in the Lea County real property records against the MELM Trust, as nominee of Billy Melot, for his 1987-1993 federal income tax liabilities.  *See* Govt. Ex. 17 at 2.  On October 5, 2010, this tax lien was re-filed in the Lea County property records.  *Id*. at 4.  The United States is entitled to foreclose on this tax lien related to the 321 E. Sanger property.

E.    Allegations of Procedural Violations

In addition to challenging the validity of the assessments against them on substantive grounds, Defendants also make a series of technical procedural challenges, none of which has merit.

1. 30 and 90 Day Letters

Defendants contend that the IRS never sent them required letters notifying them of the Revenue Agent's Report (30-day letter) or the required statutory Notice of Deficiency (90-day

23

letter) and, as such, they could not pay or challenge any deficiencies of which they were not aware. Deft. Resp. [Doc. 113] at 8-9. The IRS met all of its notification requirements in this respect. Regarding the 30-day letters, such letters were sent by Certified Mail and received by Mr. and Ms. Melot on July 1, 1999, as evidenced by Govt. Ex. 56. Mr. Melot must have been aware of these letters prior to filing his response in this matter, as they were used as Exhibit 155 in his criminal trial. The IRS also sent the required 90-day letters to Mr. and Ms. Melot, as evidenced by Govt. Exs. 5-10.

### 2. Hearing Pursuant to 26 U.S.C. § 6320

Under 26 U.S.C. § 6320, upon receiving notice of a federal tax lien filing, a taxpayer may request a hearing within 30 days to appeal the collection action. Defendants contend that they properly requested such a hearing and were denied the opportunity to contest the validity of the liens against them. Deft. Resp. at 6, 15. On October 12, 2001, Mr. and Ms. Melot each received, via certified mail, notice of the tax liens filed against them. *See* Govt. Exs. 14 and 15. These notices informed the Melots that they had the right to request a hearing to appeal the collection action, that such a request should be made by completing the enclosed Form 12153 *Request for a Collection Due Process Hearing*, and that such a request must be made by November 12, 2001. Govt. Ex. 14 at 1; Govt. Ex. 15 at 1. On March 15, 2002, over four months past the time to request a hearing, Mr. and Ms. Melot filed a document, other than the required Form 12153, that consisted of nothing but discredited tax protestor arguments. *See* Govt. Exs. 14 and 15. Not only did the responses not meet the technical requirements for requesting a hearing, but Form 12153 states that "The IRS Office of Appeals will not consider frivolous requests." IRS Form 12153 at 3. Defendants' tax protester assertions epitomize the type of frivolous requests the IRS has the right to ignore, as they did not raise any of the statutorily-

specified issues that may be addressed at a collection due process hearing, such as spousal

defenses or possible alternative means of collection, but instead only made thoroughly

discredited tax protestor arguments regarding who may be taxed and the manner in which taxes

may be collected.  Thus, based on what they filed, Defendants were not entitled to a collections

due process hearing.  Nor did the absence of such a hearing prevent Defendants from having the

opportunity to thoroughly challenge and litigate their tax assessments.

3.       Determination of Liability Prior to Assessment

Defendants contend that the IRS erred by assessing the Melots' tax liability at the same

time that it announced their tax deficiency.  They cite *Bromberg v. Ingling*, 300 F.2d 859, 861

(9th Cir. 1962), a case concerning the actions of the Tax Commissioner of Guam, for the

proposition that "Notice of Commissioner's determination of tax liability must, absent jeopardy,

precede assessment."  Deft. Resp. at 9.  In this case, the IRS' Notices of Deficiency (90-day

letters) served as notice of the Commissioner's determination of tax liability.  *See* Govt. Exs. 5-

10.  These notices were dated January 19, 2000.  *Id*.  These notices gave Defendants until April

18, 2000 to file a petition with the United States Tax Court to challenge the determination of

liability.  *Id*.  As previously discussed, Defendants filed no such petition.  The IRS Forms 4340

Certificate of Assessments for Mr. and Ms. Melot indicate that assessments of taxes were not

made until June 5, 2000, well after the time to challenge the determination, and not simultaneous

with the notice of determination, as alleged by Defendants.  *See* Govt. Exs. 1 and 2.

4.  Validity of Liens

Defendants contend that the liens against the Melots' properties that the United States is

attempting to enforce through this proceeding are invalid and unenforceable.  *See* Deft. Resp. at

10-11.  On July 25, 2010 and August 22, 2010, the IRS erroneously issued releases of Mr. and

25

Ms. Melots' federal tax liens for their 1987-1993 tax assessments, despite the fact that the balances reflected in these liens had not been paid.  *See* Deft. Exs. M, N, O, P, and Q.  Despite this erroneous release, the tax liens are still valid.  First, the IRS timely re-filed these liens with the Lea County Clerk on March 18, 2011 and March 28, 2011.  *See* Govt. Ex. 58.  Second, the liens are still valid because it is uncontested that the assessed amounts of tax liability for the 1987-1993 tax years have not been satisfied and the statute of limitations for collections has not expired.  A lien imposed by 26 U.S.C. § 6321 arises automatically at the time of tax assessment, and remains in place until the liability is satisfied or until it becomes unenforceable by lapse of time.  *See* 26 U.S.C. § 6322.  In general, the statute of limitation on collection expires ten years after the date of assessment, however, "if a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax is satisfied or becomes unenforceable."  26 U.S.C. § 6502(a).  The IRS assessed 1987-1993 taxes against Mr. and Ms. Melot on June 5, 2000. Therefore, although the statute of limitations on collection would have run on June 5, 2010 had the United States done nothing, on July 31, 2009, it filed this present suit to reduce to judgment the Melots' 1987-1993 tax assessments.  *See* Complaint [Doc. 1].  Accordingly, the statute of limitations on collection has not expired and the federal tax liens are valid and enforceable.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the United States of America's *Motion for Summary Judgment* is GRANTED in part and DENIED in part.  The *Motion for Summary Judgment* is denied to the extent that it seeks to impose liability on Defendant Katherine Melot for unpaid income taxes for the 1996 tax year.  It is granted in all other respects.  Specifically,

the Court finds that:

1)  Defendant Billy Melot is liable for the full amount of his unpaid income taxes, penalties, statutory additions, and interest for the 1987, 1988, 1989, 1990, 1991, 1992, and 1993 tax years as set forth in Plaintiff's Amended Complaint at ¶ 14;

2) Defendant Katherine Melot is liable for the full amount of her unpaid income taxes, penalties, statutory additions, and interest for the 1987, 1988, 1989, 1990, 1991, 1992, and 1993 tax years as set forth in Plaintiff's Amended Complaint at ¶ 17;

3)  Defendant Billy Melot is liable for the full amount of his unpaid Form 720 federal excise taxes, penalties, statutory additions, and interest for the tax periods ending 03/31/1989 through 03/31/1991 and 03/31/1992 through 12/31/1993 as set forth in Plaintiff's Amended Complaint at ¶ 20;

4)  The United States is entitled to foreclose its tax liens against the properties discussed in this Memorandum Opinion and Order and set forth in Plaintiff's Amended Complaint at ¶¶ 23, 25, 32, 34, and 36;

5)  The United States is entitled to foreclose its tax liens against the Melots' personal property assets; and

6) The sales proceeds from the personal property assets and real property shall be applied to Defendant Billy Melot's outstanding federal tax liabilities for the 1987-1993 tax years and to Defendant Katherine Melot's outstanding federal tax liabilities for the 1987-1993 tax years.

_____
**UNITED STATES DISTRICT JUDGE**