IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                                          CV 09-0752 JH/WPL

BILLY R. MELOT and
KATHERINE L. MELOT,

       Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO STAY AND DEFERRING RULING
ON PLAINTIFF'S MOTION TO APPOINT RECEIVER**

Billy and Katherine Melot have moved to stay the proceedings to enforce the final judgment under Federal Rule of Civil Procedure 62 based on both the pending post-trial motion (Doc. 185) and their appeal of this Court's determination (Doc. 177). (Doc. 176.) They also seek a waiver of any supersedeas bond. (*Id.*) The United States opposes the requests for a stay and a waiver of bond (Doc. 184), and the Melots have replied (Doc. 187). The United States has filed an opposed motion to appoint a receiver to sell real properties. (Doc. 188.) After reviewing the pleadings and the relevant law, I find that a stay is warranted but a partial supersedeas bond is required. Pending determination of an appropriate bond amount and the posting of that amount, as described herein, I shall defer ruling on the United States' motion to appoint a receiver.

In 2009, the United States brought this action to reduce outstanding tax assessments against the Melots for the 1987 to 1993 and 1996 tax years to judgment and to foreclose federal tax liens on real and personal property. (Doc. 33; Doc. 141 at 1-2.) While this action was pending, a federal

1

jury convicted Mr. Melot of, among other charges, tax evasion with respect to the 1987 to 1993 tax years. (*Id.* at 2-3.) Ultimately, this Court granted summary judgment in favor of the United States for all claims at issue except liability for the 1996 tax year, a claim that was only raised against Ms. Melot. (Doc. 141 at 1-2, 26-27.) The United States subsequently dismissed its claim to recover taxes from Ms. Melot for the 1996 tax year. (Doc. 147; Doc. 157.) After determining that the innocent spouse doctrine does not apply to Ms. Melot (Doc. 172), the Court entered final judgment (Doc. 173). The Melots filed a notice of appeal (Doc. 177) and a motion for a new trial under Federal Rule of Civil Procedure 59 (Doc. 185).

In the motion to stay, the Melots argue that a stay of the proceedings to enforce the final judgment is appropriate because they have filed a post-trial motion and a notice of appeal. (Doc. 176 at 1.) Thus, either Federal Rule of Civil Procedure 62(b) or (d) could provide the basis for a stay. Under Rule 62(b), "[o]n appropriate terms for the opposing party's security, the court may stay the execution of a judgment--or any proceedings to enforce it--pending disposition of . . . [a motion] under Rule 59, for a new trial or to alter or amend a judgment . . . ." Rule 62(d) applies when an appeal is taken and allows the appellant to "obtain a stay by supersedeas bond . . . ." The stay automatically "takes effect when the court approves the bond." *Id.* The amount of the supersedeas bond is derived from the entire judgment, interest, and allowable costs. D.N.M.LR-Civ. 65.1(d)(1).

In comparing stays under the two subdivisions, a Rule 62(d) stay is automatic once the bond is approved, while a Rule 62(b) stay is discretionary. Additionally, both provisions require some security for the opposing party, though Rule 62(b) does not specify the nature of the security. *See Ireland v. Dodson*, No. 07-4082-JAR, 2009 WL 1559784, *1 (D. Kan. May 29, 2009). However, under either provision, a court may employ its discretion to waive or reduce the bond or other

security requirement. *Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871, 873 (10th Cir. 1986) (citations omitted); *N. Ind. Pub. Serv. Co. v. Carbon Cnty. Coal Co.*, 799 F.2d 265, 281 (7th Cir. 1986) (citations omitted); *Meyer v. Christie*, No. 07-2230-CM, 2009 WL 3294001, *1 (D. Kan. Oct. 13, 2009). The debtor bears the burden to demonstrate objectively good cause for such a waiver, which includes showing that posting a full bond is impossible or impractical and proposing a plan that will provide adequate security for the judgment creditor. *Meyer*, 2009 WL 3294001, at *1 (citation omitted); *Sierra Club v. El Paso Gold Mines, Inc.*, No. Civ.A.01 PC 2163, 2003 WL 25265871, *7 (D. Colo. Apr. 21, 2003) (quoting *United States v. Kurtz*, 528 F. Supp. 1113, 1115 (E.D. Pa. 1981)).

The Melots focus the bulk of their argument on a four-factor analysis that they have drawn from *Hilton v. Braunskill*, 481 U.S. 770 (1987), and that could be used when the court considers whether to exercise its discretion to order a stay under Rule 62(b).[1] (Doc. 176 at 2-4.) However, as the facts of *Braunskill* demonstrate, the four factor analysis typically applies to motions to stay equitable relief, which are brought under Rule 62(c). In *Braunskill*, the district court had determined that a writ of habeas corpus should issue, thereby releasing a prisoner, and the state sought to stay the release pending appeal. 481 U.S. at 773. The question that the Supreme Court confronted was what factors lower courts should consider when evaluating a state's request to stay the release of a successful habeas corpus petitioner. *Id.* at 772. The Court utilized the four factors addressed by the Melots, which it drew from lower court decisions regarding stays of civil injunctive orders. *Id.* at 774-76 (citations omitted).

---

[1] The four factors are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Braunskill*, 481 U.S. at 776 (citations omitted).

Unlike the equitable relief addressed in *Braunskill*, the Court here ordered the payment of taxes, fees, and penalties, also known as a monetary judgment; it did not impose equitable relief. (*See* Doc. 141 at 27.) The Melots have cited one case from the Northern District of California that applied the Rule 62(c) four-factor analysis to a Rule 62(b) motion. (Doc. 176 at 3 (citing *United States v. Moyer*, No. C 07–00510, 2008 WL 3478063 (N.D. Cal. Aug. 12, 2008)).) At issue in *Moyer* was an order of sale, and the court applied the four-factor analysis because of the discretion granted by Rule 62(b) and because "this Court finds it proper . . . ." *Moyer*, 2008 WL 3478063, at *6. At least one other court has declined to adopt the Rule 62(c) factors when considering whether to stay an order of sale pending appeal because such judgments are judgments at law and not judgments in equity. *See United States v. O'Callaghan*, 805 F. Supp. 2d 1321, 1326-27 (M.D. Fla. 2011).

I need not determine whether these factors should guide my discretion under Rule 62(b). Based on the amount of the judgment, which totals in excess of $27,000,000 (Doc. 68 at 9; Doc. 141 at 27), and this Court's interest in preserving the status quo and protecting all parties involved, *see Meyer*, 2009 WL 3294001, at *3, I find that a stay is appropriate pending disposition of post-trial motion and appeal. Accordingly, a stay is authorized under Rule 62(b) so long as the interests of the United States are sufficiently protected, as discussed below.

Next, I must determine the appropriate security under Rule 62(b) and whether to waive a supersedeas bond under Rule 62(d). To make this determination, I must consider certain criteria, referred to by the parties as the *Dillon* factors, which include:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment . . . ; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money . . . ; and (5) whether the defendant is in such a precarious financial

> situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Dillon v. City of Chicago*, 866 F.2d 902, 904-05 (7th Cir. 1988) (internal citations and quotations omitted).

As to the first and second factors, the United States and the Melots present vastly different notions of how easily and quickly the United States will be able to collect on the judgment. The Melots assert that the process to execute the liens is not complex and the time required is short. (Doc. 176 at 5.) The United States contends that the collection process will be complex and time-consuming because it involves both real and personal property that is titled in nominee names. (Doc. 184 at 3.) Regarding the third, fourth and fifth factors, the Melots appear to misunderstand their import. The Melots argue that their properties are physically and financially secure, in satisfaction of the third factor. (Doc. 176 at 5.) They assert that their properties are sufficiently available for liquidation, rendering a bond a waste of money. (*Id.*) Finally, they state that using their non-real property assets to secure a bond would make those assets unavailable to cure any deficiency on the judgment after the forced sale of the property. (*Id.*) The United States contends that the Melots do not have the funds to pay the judgment. (Doc. 184 at 3.) It further argues that the value of the Melots' real property is diminishing because they are not paying property taxes or homeowners insurance and because they may not adequately maintain the properties for the length of the appellate review. (*Id.*)

Upon consideration of each of the five factors, I find that, as a whole, they decisively weigh in favor of requiring the Melots to post at least a partial supersedeas bond. First, I find that the process to obtain clean title on the real property at issue will not be simple and quick. While some of the real property at issue is titled to the Melots, other properties are titled in nominee names,

which is likely to complicate the process. Next, I have no confidence that the Melots have funds available to pay the judgment against them. Ms. Melot's tax liabilities are in excess of $9,000,000 and Mr. Melot's exceed $18,000,000. (Doc. 68 at 9; Doc. 141 at 27.) The amount of the judgment alone would be onerous for any two individuals. In this case, the Melots' inability to pay is even clearer based on their motions to proceed on appeal *in forma pauperis*. (*See* Doc. 179; Doc. 180.) Mr. Melot is currently incarcerated with no income and no expenses (Doc. 179 at 3-5), and Ms. Melot chooses not to work and depends on public assistance and the gifts of family and friends for income (Doc. 180 at 3-4). Though the Court found that the Melots could pay the fee to proceed with their appeal (Doc. 183 at 3), it is plain that they do not have the resources to pay the entire amount of the judgment. Because the Melots do not have the financial ability to pay the amount of the judgment, requiring the posting of a supersedeas bond would not be a waste of money. Furthermore, despite the Melots' purportedly troubled financial circumstances, neither indicated, either in this motion or in their motions to proceed *in forma pauperis*, that they have any creditors aside from the United States.

In addition to the factors, the Melots have argued that a supersedeas bond should not be required because of the United States' liens on their property. (Doc. 176 at 4.) It appears that the properties are the Melots' sole assets and the only means by which they can make payments toward the judgment. However, their property, by their estimate, is worth a total of $755,400.[2] That is $26,244,600 short of the total judgment against them, without considering the mounting interest and penalties. The liens are, therefore, not sufficient to satisfy the entire judgment.

---

[2] This estimate does not include their properties that are titled in nominee names, and it is not based on any supporting evidence.

A brief overview of the goal underlying the supersedeas bond requirement supports my assessment that, in this case, the bond cannot be waived and the liens cannot be substituted for it. A supersedeas bond serves the purpose of protecting the interest of the judgment creditor by transferring the risk of loss from the judgment creditor to the judgment debtor. *See Peacock v. Thomas*, 516 U.S. 349, 359 (1996); *Paynter*, 807 F.2d at 873-74 (citations omitted). In this case, the risk of loss is particularly great. Ms. Melot has advised the Court that she spends $0 each month on home maintenance[3] and that she does not pay for homeowner's insurance. (Doc. 180 at 6-7.) There is an obvious risk that damage to the property could occur, thereby decreasing the value of the property. Moreover, the Melots will have little interest in the upkeep of their properties now that it appears that the United States will be able to sell them to collect on the judgment against them. Thus, there is a real risk that the properties could decrease in value if a stay were imposed without the posting of a supersedeas bond, and the United States would be harmed as a result.

I recognize that the Melots are likely unable to afford a full supersedeas bond, and I am willing to accept that the amount of a full supersedeas bond in this case is unreasonable. I also acknowledge that the Melots have an interest in retaining their property in case they prove successful on either the post-trial motion or their appeal. However, I am confident that any prejudice to them would not be too great because the monies obtained by the United States in satisfaction of the judgment would be recoverable. Thus, I must determine the appropriate bond amount.

The United States has requested that this Court require a supersedeas bond of $9,000,000 to adequately protect it if a stay is entered. The Melots have not presented an alternative bond amount

---

[3] She did indicate that she spends $400 per month on miscellaneous expenses, or unforeseen costs, including transportation, repairs to her vehicles or the house, and other expenses. (Doc. 180 at 7.)

that would be both reasonable and sufficiently protective of the United States' interest, so they have not met their burden. Nonetheless, a $9,000,000 bond is likely impractical and in excess of the amount necessary to protect the interests of the United States. The Melots do not have extensive financial resources, and the United States will likely only be able to recover on part of the judgment by selling the Melots' property. The risk that a stay poses to the United States is that the property will lose value. Thus, a reasonable bond amount would be slightly greater than the value of the properties that are subject to liens by the United States. Unfortunately, I have no evidence before me regarding the actual value of these properties, and I consequently cannot fashion a reasonable alternate supersedeas bond that will adequately protect the United States' interest.

IT IS THEREFORE ORDERED that a stay under Rule 62(b) is authorized and a stay under Rule 62(d) will be automatic if a supersedeas bond of an amount to be approved by the Court is posted. Should the Melots wish to pursue this route, they must move for court approval of a bond amount that is no less than the actual value of their properties, including the properties that are subject to government liens and titled in nominee names, as supported by evidence, no more than **ten (10)** days after the entry of this order. The United States shall have seven (7) days to respond. If no motion is made, the amount of the supersedeas bond shall be set at $9,000,000, and I will proceed to rule on the United States' motion to appoint receiver.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.