IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.          CV 09-0752 JCH/WPL

BILLY R. MELOT and
KATHERINE L. MELOT,

    Defendants.

## ORDER DENYING MOTION FOR PROTECTIVE ORDER
## AND MOTION TO SUPPRESS

In preparation for the hearing on Steven M. Byers' motion to intervene, the United States served subpoenas duces tecum on the Federal Bureau of Prisons and the Nevada Department of Corrections seeking all documentation of calls and mail between Mr. Byers and Defendants Billy R. and Katherine L. Melot as well as all emails and calls to Mr. Melot. (Doc. 209; Doc. 213.) Both the Melots and Mr. Byers independently filed motions arguing that the materials obtained by the United States are privileged and protected. (Doc. 218; Doc. 219.) The United States responded to the motions. (Doc. 228; Doc. 236.) At the hearing, I advised that I would accept the documents, review them, and determine whether they are privileged or protected.[1] Having considered the pleadings, the documents, and the relevant law, I conclude that the materials are not privileged and that any work-product protection has been waived. Accordingly, I will deny the motions.

---

[1] Though I took the motions under advisement at the hearing, newly retained counsel for Mrs. Melot nonetheless filed a supplement to the motion without first requesting leave of the Court. Because Mrs. Melot's motion was originally jointly filed with her husband and because counsel failed to request leave before amending Mrs. Melot's motion, I will not consider this supplement and will direct that it be stricken from the record. However, I note that counsel did not raise any new argument related to the merits of the motion.

## I. Summary of Briefing on Mr. Byers' Motion to Suppress

On July 5, 2012, Mr. Byers moved to suppress evidence that he alleges was wrongfully obtained because it is protected as "Trial Preparation material." (Doc. 218 at 1.) It appears that he is claiming that the mail and calls are protected as work product. (Doc 218 at 1-2.) Though it is not entirely clear from the motion, he may also be asserting that the documents are entitled to attorney-client privilege. (*Id.*)

The United States responded on July 18, 2012. (Doc. 228.) The United States first contends that this Court has no jurisdiction over a subpoena issued in the district of Nevada. (*Id.* at 1-2.) The United States next asserts that work product does not apply to letters from Mrs. Melot to Mr. Byers. (*Id.* at 3-4.) It states that Mrs. Melot is not an attorney for Mr. Byers, so her correspondence is not sheltered. (*Id.*) Last, the United States asserts that the crime-fraud exception applies, waiving any potential protection, and that the documents could be obtained under Federal Rule of Civil Procedure 26(b)(3) because the United States' had substantial need for the information and was unable to obtain it otherwise. (*Id.* at 4-6.)

No reply was filed prior to the hearing.

## II. Summary of Briefing on the Melots' Motion for Protective Order

The Melots filed a motion for protective order on July 9, 2012. (Doc. 219.) They argue that some of the materials include communications with Mr. Melot's criminal defense attorney and are subject to attorney-client privilege, that the communications between Mr. and Mrs. Melot are subject to spousal and attorney-client privilege, and that all of the material constitutes protected work product. (*Id.* at 1.)

In response, the United States first asserts that this Court lacks jurisdiction over the subpoenas. (Doc. 235 at 1.) Next, it argues that the marital communications privilege does not

apply because the communications were not confidential. (*Id.* at 2.) It also states that work product doctrine does not apply to the emails between the Melots because they do not discuss legal theories or mental impressions but rather discuss efforts "to mislead this court and hinder the United States." (*Id.* at 3.) Finally, the United States contends that two exceptions apply to waive any applicable protection: the crime-fraud exception and the Federal Rule of Civil Procedure 26(b)(3) exception. (*Id.* at 4-5.)

No reply was filed prior to the hearing.

### III. Jurisdiction

The United States' response to both motions first raises the issue of jurisdiction. Prior to proceeding, then, I must determine whether I have jurisdiction to consider the Melots' and Mr. Byers' claims of privilege and work-product protection. Federal Rule of Civil Procedure 45 governs the issuance of subpoenas, and it provides that only the court that issued a subpoena has authority to quash or modify it. FED. R. CIV. P. 45(c)(3). However, the section of the rule governing claims of privilege or protection discusses "the court" and never limits its provisions to the "issuing court." FED. R. CIV. P. 45(d). Most relevant here, under Rule 45(d)(2)(B), if information is produced in response to a subpoena and that information is subject to a claim of privilege or protection,

> [T]he person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim.

Thus, the language of the relevant rule does not appear to limit the authority to rule on claims of privilege or work-product protection to the issuing court.[2]

Furthermore, it would be illogical to require claims of privilege and protection related to already produced information to be litigated before the issuing court. Any order related to privilege or protection does not modify or alter the subpoena, so it does not implicate the authority of another court. In addition, the court handling the litigation is best situated to resolve issues of privilege and waiver because of its knowledge of the case.

I therefore find that I have jurisdiction over these motions.

### IV.     Attorney-Client Privilege

The Melots and possibly Mr. Byers attempt to claim that the information obtained by the United States is subject to attorney-client privilege. "The attorney-client privilege protects 'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his capacity as a legal advisor.'" *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d 277, 278 (10th Cir. 1983)). "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege," *id.* (quoting *Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1550-51 (10th Cir. 1995)); however, the fact that an attorney is not involved in the communication at all is dispositive.

None of the conversations presented by the United States are between an attorney and her client. While the Melots suggest that the United States obtained conversations between Mr. Melot and his criminal defense attorney, counsel for the United States represented that he did not

---

[2] The case cited by the United States, *S.E.C. v. CMKM Diamonds, Inc.*, 656 F.3d 829 (9th Cir. 2011), dealt with a motion to quash or modify a subpoena, which is governed by a subsection of the rule that is inapplicable here.

see any such conversations and none were presented to the Court. Accordingly, I find that the attorney-client privilege does not apply.

### V.     Marital Privilege

The Melots claim that their conversations are subject to marital privilege. As with all privileges, the marital privilege must be construed narrowly. *United States v. Neal*, 743 F.2d 1441, 1447 (10th Cir. 1984) (citing *United States v. Nixon*, 418 U.S. 683 (1974)). Privilege is generally in derogation of the search for truth. *Id.* In conjunction, this privilege, like all others, must be interpreted in the light of reason and experience. *Id.* (citing FED. R. EVID. 501).

In federal court, marital privilege has two aspects: the marital testimonial privilege and the marital communications privilege. *United State v. Montague*, 421 F.3d 1099, 1103 (10th Cir. 2005) (quoting *United States v. Bahe*, 128 F.3d 1440, 1441-42 (10th Cir. 1997)). Because the marital testimonial privilege has historically been available only in federal criminal or grand jury proceedings and not in civil proceedings, I will treat the Melots' motion as an invocation of only the marital communications privilege. *See Ryan v Commissioner*, 568 F2d 531 (7th Cir. 1977); *In re Grand Jury*, 524 F2d 209 (10th Cir. 1975). The marital communications privilege covers all confidential communications made during a valid marriage with a few exceptions, including communications not made in absolute confidence and statements made as part of a joint criminal enterprise that is planned or in progress. *United States v. Short,* 4 F.3d 475, 478 (7th Cir. 1993); *Neal*, 743 F.2d at 1447. "The party seeking to overcome the privilege has the burden of establishing that the communications were not intended to be confidential." *Montoya v. City of Albuquerque*, No. CV 03–0261 JB/RHS, 2004 WL 3426435, at *5 (D.N.M. May 18, 2004).

In this case, the United States has demonstrated that the Melots' conversations over the Federal Bureau of Prisons TRULINCS e-mail system were not made in absolute confidence. All

of the admitted conversations between the Melots were exchanges via TRULINCS. (*See* Doc. 238 Ex. 48.) Use of TRULINCS is voluntary and other means exist for families to maintain contact with inmates. (Doc. 238 Ex. 49 at 2.) However, when an inmate chooses to use TRULINCS and each time he logs in to the system, he is informed that his communications are subject to monitoring and are not privileged, private, or confidential. (*Id.*; *see also* Doc. 238 Ex. 49-B.) Similarly, a free citizen who wishes to communicate with an inmate via TRULINCS must use a system called Corrlincs. (Doc. 238 Ex. 49 at 2.) Corrlincs users also consent to monitoring when using the system. (*Id.*) Based on this information, it is clear that the Melots' communications through the TRULINCS system were not confidential and the marital communications privilege is inapplicable.

Even if the emails had been confidential, for the reasons discussed below, I would find that they were made as part of a joint enterprise to commit a fraud on the Court and so are not entitled to privilege.

## VI.     Work-Product Protection

Both the Melots and Mr. Byers claim that their communications are protected work-product. The work-product doctrine promotes the "broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). Its confines are set out in the Federal Rules of Civil Procedure: "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3)(A). Because the work-product doctrine applies to documents prepared by a party, it applies equally to pro se parties. *See Otto v. Box U.S.A. Group, Inc.*, 177 F.R.D. 698, 699 (N.D. Ga. 1997). The burden lies on the party

claiming protection to prove that the documents at issue are work-product. *Ledgin v. Blue Cross & Blue Shield of Kan. City*, 166 F.R.D. 496, 498 (D. Kan. 1996) (citations omitted). Thus, the party asserting the protection must provide sufficient information for the opposing parties and the court to determine the applicability of the doctrine. FED. R. CIV. P. 26, advisory committee notes (1993 amend.).

In this case, Mr. Byers is not eligible to claim the work-product protection because he is not a party to the litigation. In my proposed findings and recommended disposition, filed concurrently with this order, I find that Mr. Byers' asserted interest in the properties at issue in this litigation is invalid. Thus, he is not a party, and he cannot invoke the work-product doctrine. *See Hawkins v. S. Plains Int'l Trucks, Inc.*, 139 F.R.D. 682, 683-84 (D. Colo. 1991). The Melots, however, are parties and may claim that their documents are protected work-product.

## VII. Waiver of Work-Product Protection

Though work-product could apply to the Melots' documents, the Melots have waived the protection in two separate ways. First, the Melots waived the protection by disclosure. The disclosure of a document to third persons ordinarily does not waive work-product immunity, but it does when the disclosure substantially increases the opportunity for an adversary to obtain the information. CHARLES ALAN WRIGHT ET AL., 8 FEDERAL PRACTICE AND PROCEDURE § 2024 (3d ed.); *see also United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010) (quoting *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 605 (D.C. Cir. 2001)) (internal quotation marks omitted) ("[D]isclosing work product to a third party can waive protection if such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary."). "Under this standard, the voluntary disclosure of attorney

work product to an adversary or a conduit to an adversary waives work-product protection for that material." *Deloitte LLP*, 610 F.3d at 140.

Thus, the exchange of trial preparation materials among the Melots and Mr. Byers does not automatically waive the work-product protection. However, the e-mails between the Melots were exchanged via TRULINCS. As discussed above, TRULINCS requires that the inmate and the free citizen consent to monitoring. It is obvious that the TRULINCS system, operated by the United States Bureau of Prisons, is a conduit to the United States. Thus, I find that the protection has been waived.

Second, the work-product protection has been waived by the Melots' use of their e-mails and letters to coordinate in an attempt to perpetrate unethical and fraudulent conduct. The United States frames this as the crime-fraud exception (Doc. 228 at 4-5; Doc. 235 at 4-5), but the case law discussing this exception focuses on a party's use of his attorney to perpetrate a crime or fraud. *See In re Grand Jury Subpoenas*, 144 F.3d 653 (10th Cir. 1998); *In re Grand Jury Proceedings (Vargas)*, 723 F.2d 1461 (10th Cir. 1983). The crime-fraud test appears inapplicable when no attorney is involved. Nonetheless, the Northern District of Georgia has considered a similar issue and found the work-product protection vitiated where a pro se party made a secret video of a witness that would have been unethical had it been done or encouraged by an attorney. *Otto*, 177 F.R.D. at 700-01. The court concluded that, because work-product is intended to preserve the integrity of the adversarial process, the protection is stripped by a pro se party's unethical conduct. *Id.* at 701 (citing *Parrott v. Wilson,* 707 F.2d 1262, 1271 (11th Cir. 1983)).

In this case, collaboration in an effort to perpetrate a fraud on the Court would be, at the very least, unethical if done or encouraged by an attorney. Having reviewed the letters and e-mails, and having compared them with the pleadings filed in this case, I find that the United

States has presented a prima facie case of attempted fraud. The prima facie case against Mr. Melot, Mrs. Melot, and Mr. Byers will be described in detail in the certifications of criminal contempt that are issued concurrent with this order. The case includes evidence that Mr. Byers used a false address with the assistance of Mrs. Melot and with the knowledge of Mr. Melot in an effort to conceal his incarcerated status; that the Melots and Mr. Byers made various statements in pleadings that are false and contradicted by their letters and e-mails; that they conspired to conceal assets and property ownership; and that they used their e-mails and letters in furtherance of these efforts. It is clear that the pro se analog to the crime-fraud exception applies to strip the e-mails and letters of any potential work-product protection.

### VIII.  Conclusion

In conclusion, I find that the letters and e-mails exchanged between Mr. Byers, Mr. Melot, and Mrs. Melot are not protected under the attorney-client privilege or the marital communications privilege. I further find that Mr. Byers, as a non-party, may not invoke the work-product doctrine. Finally, I find that the work-product protection has been waived entirely by the Melots' voluntary disclosure of the information to a conduit to the United States and through the application of the pro se analog to the crime-fraud exception.

IT IS THEREFORE ORDERED that the Melots' Motion for Protective Order (Doc. 219) and Mr. Byers' Motion to Suppress (Doc. 218) are DENIED.

_William P. Lynch_
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.