IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                          CV 09-0752 JCH/WPL

BILLY R. MELOT and
KATHERINE L. MELOT,

      Defendants.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

     Steven M. Byers moved to intervene in this matter on May 25, 2012 (Doc. 195) and subsequently applied to stay the enforcement of the final judgment (Doc. 197). He asserts that he has a legal claim to all properties owned by the Melots, all of which happen to be at issue in this already concluded litigation. The United States responded to the motion, expressing concern that the Melots and Mr. Byers were attempting to defraud the court. (Doc. 199.) It later filed an addendum that included additional facts and evidentiary support. (Doc. 205.) Mr. Byers replied. (Doc. 208.) The motion was referred to me to render proposed findings of fact and to recommend a disposition to the Court (Doc. 200), and I held a hearing on the motion on July 25, 2012, at which Mrs. Melot and counsel for the United States were present in person and Mr. Byers appeared telephonically (*see* Doc. 236). Having considered the pleadings, testimony, exhibits,[1] and relevant law, I find that Mr. Byers' motion to intervene is both untimely and without merit. Accordingly, I recommend that the motion be denied. If the Court adopts this recommendation, Mr. Byers application to stay will be moot and should be stricken from the record.

---

[1] I deemed all exhibits admissible in an order filed concurrently with these proposed findings and filed the exhibits as Exhibits to the Motion Hearing.

**FACTUAL HISTORY AND FINDINGS**

Mr. Byers filed the motion to intervene two months after the Court entered its final judgment in this case. He represents that he only became aware of "the litigation" in May of 2012 while "attempting to enforce a debtor's lien against the properties . . . ." (Doc. 195 at 1.) He asserts a claim to all properties owned by the Melots, including two tracts of land on Johnson Road, two tracts of land bordering 2805 East Rose Road, thirteen acres of land, the house and land at 2805 East Rose Road, and commercial property on East Sanger Street, all of which are located in Hobbs, N.M. (*Id.* at 1-3.) He states that he has valid liens on all properties and a vested interest in all properties. (*Id.* at 3.) No documentation was attached in support of the motion.

The United States responded, expressing concern that this motion constituted an attempt to commit a fraud on the Court and explaining that Mr. Byers, a prisoner in Nevada, was not the individual signing the pleadings and that there is no evidence of any lienholders to the properties aside from the United States. (Doc. 199.) After gathering additional facts, the United States filed an addendum. (Doc. 205.) Included in that addendum was documentation suggesting that Mrs. Melot has a power of attorney from Mr. Byers, that she was signing on his behalf, that she had arranged for an address that he could list as his mailing address, and that alleged lien interests had been filed on May 24, 2012. (*Id.* at 1-2.)

Mr. Byers filed a reply contesting the factual allegations of the United States, but failing to support his asserted interest in the properties or his claim of a right of intervention with any proof. (Doc. 208.)

On July 25, 2012, I held a hearing on the motion. Mr. Byers began by requesting to withdraw his motion to intervene because he was unable to obtain documentary support for the motion, a request that was opposed by the United States. I placed Mr. Byers under oath, and he

2

testified that he obtained the lien interest through a contractual agreement with Mr. Melot. Pursuant to that agreement, he provided work, namely assistance in preparing court documents, while he and Mr. Melot were incarcerated together in exchange for the interest. Mr. Byers admitted that he met Mr. Melot when they were both incarcerated in the Lea County Detention Center in mid-2010. Despite his assistance in preparing legal documents, Mr. Byers testified that he was only "vaguely" aware of the civil suit and "received periodic documents on it" but did not realize that the properties would be foreclosed on until the government filed its motion to appoint receiver. However, he admitted that he received a copy of the Court's order that granted partial summary judgment to the United States. He also testified that he did not prepare any documents for Mrs. Melot, although he conceded that he might have done research and provided caselaw on motions that she signed.

After reviewing the pleadings in this case and the testimony and exhibits presented at the hearing, I find that Mr. Byers is almost entirely incredible. He has been disingenuous with this Court from the day that he filed his motion to intervene, and he began committing misconduct in this matter long before. Specifically, and only as is relevant to the present motion, I find that he lied to or attempted to mislead the Court about his relationship to the Melots, his knowledge of the subject matter and effect of this action, and his involvement in the preparation of pleadings by Mrs. Melot. I also find that he has been engaged in the unauthorized practice of law.

First, in his motion to intervene, he represented that he only became aware of "the litigation" recently, (Doc. 195 at 1), but the evidence establishes that he has known about the litigation since mid-2010. Mr. Byers admitted that he has been preparing legal documents for Mr. Melot since they were incarcerated together at Lea County Detention Center. The subject matter of this litigation has, from the beginning, been the United States' effort to reduce

3

outstanding tax assessments to judgment. (*See* Doc. 1.) Mr. Byers tried to circumvent the inference of knowledge by testifying that he simply had not realized that the United States intended to foreclose on the Melots' properties. However, this Court's Memorandum Opinion and Order, issued January 6, 2012, which Mr. Byers admitted that he received in January of 2012, clearly stated, "The United States is entitled to foreclose its tax liens against the properties . . . [and] [t]he United States is entitled to foreclose its tax liens against the Melots' personal property assets[.]" (Doc. 141 at 27.) Further, the Melots quickly submitted an application to stay the enforcement of the judgment, which Mr. Byers almost certainly prepared, that acknowledged that the government would be foreclosing on the Defendants' properties, including Mrs. Melot's primary residence. (Doc. 149 at 3.) Accordingly, I find that he knew of the litigation and the purpose therefor from the time that he began providing legal assistance to the Melots.

Next, in his reply to the motion to intervene, Mr. Byers stated that the United States' assertion that he and Mr. Melot met when they were incarcerated in the Lea County Detention Center was a "figmental scenario" that was based on a failure "to properly conduct . . . research" and suggested that "they may have developed a lasting friendship prior to their 'alleged' chance encounter." (Doc. 208 at 2.) However, he admitted at the hearing that he met Mr. Melot in the Lea County Detention Center after Mr. Melot was transferred there, which occurred after July 6, 2010. (*See* Doc. 199 Ex. H.) I find that Mr. Byers' statements in his reply constituted an effort to further mislead the Court.

Mr. Byers also stated that at the hearing that he was only "vaguely" aware of the litigation and received only "periodic" documents about it, yet he affirmatively admitted that he was preparing legal documents for Mr. Melot in this case. I find that not only has he been well aware of the litigation since mid-2010, but he has been preparing legal documents and providing

4

legal assistance to the Melots since at least January of 2012 if not long before. He acknowledged that he and Mr. Melot came to an agreement while they were incarcerated together in 2010 that Mr. Byers would provide services in the form of preparing court documents in exchange for money or property. I infer, then, that Mr. Byers has been involved in preparing pleadings since mid-2010, or approximately the time that the Melots began filing motions to dismiss their counsel.[2] (*See* Doc. 27.) Based on statements made by Mrs. Melot in her letters to Mr. Byers, I find that he has not just been assisting the Melots at times but that he has been intimately involved in the litigation in this case. He has been handwriting the pleadings for the Melots, which Mrs. Melot types, proofreads, and submits to the Court. (Doc. 241 Exs. 5, 11, & 15.) Mrs. Melot has expressed unwillingness to file anything without hearing from Mr. Byers. (Doc. 241 Ex. 2.) The fact that Mr. Byers has been conducting all of the legal work in this case since at least January of 2012 is obvious.

At the hearing, Mr. Byers attempted to skirt the obvious conclusion that he has engaged in the unauthorized practice of law by stating that he has only provided legal assistance to Mr. Melot, another inmate. The record is replete with evidence demonstrating that this is untrue. From the outset, in August of 2010, Mr. Byers wrote a motion on behalf of both Mr. and Mrs. Melot. (Doc. 27.) Documents filed since that time by the pro se Defendants have been filed jointly, purporting to be on behalf of both Mr. and Mrs. Melot. If that was not sufficient, Mrs. Melot's letters to Mr. Byers repeatedly ask for legal advice. For example, on January 7, 2012, Mrs. Melot wrote Mr. Byers a letter quoting the beginning and end of Judge Herrera's Memorandum Opinion and Order and asking, "How long do I have? There is now no hearing right?" (Doc. 241 Ex. 1.) She also asked for his assistance in preparing for the hearing on the

---

[2] Notably, that motion and several that follow are in Mr. Byers' handwriting, as evidenced by a comparison between those documents and the pleadings filed by Mr. Byers in his own cases. (*Compare* Docs. 27, 37 & 38, *with* Doc. 199 Exs. C, D, F & G.)

motion to intervene, staying "coach me on what to expect and how to answer. I do not want to say the wrong thing." (Doc. 241 Ex. 20.) Equally incriminating, on June 12, 2012, Mr. Melot told Mrs. Melot, "He has done all this legal work **for us** and **we** haven't been able to pay him anything so the liens are to cover his legal work." (Doc. 241 Ex. 37 at 2 (emphasis added).)

## REQUEST TO WITHDRAW MOTION

At the beginning of the hearing, Mr. Byers expressed his desire to withdraw his motion to intervene. This request does not comply with the Local Rules of this District, and I recommend that it be denied.

To withdraw a document from the consideration of the court, the filer must file and serve a notice of withdrawal that specifically identifies the document being withdrawn. D.N.M.LR-Civ. 7.7. Withdrawal requires consent of all parties or approval of the court. Here, determining the document that Mr. Byers seeks to withdraw is not an issue. However, he does not have the consent of the United States to withdraw the motion. Further, because the motion is entirely without merit and considerable resources have been expended by the United States and the Court in relation to the motion, there is no reason for the Court to permit a withdrawal that would allow Mr. Byers to reassert a non-existent interest at a later date. Instead, I recommend that the Court reach the merits of the motion and deny it with prejudice.

## APPLICABLE LAW

Mr. Byers has asserted that he has a right to intervene because he has an interest in the property that is the subject of this litigation. Federal Rule of Civil Procedure 24 provides that,

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). Key issues in determining whether Mr. Byers has a right to intervene, then, are whether his motion is timely and whether he actually has in interest in the Melots' properties.

Intervention as of right is rarely denied based on timeliness. *See R & G Mortg. Corp. v. Federal Home Loan Mortg. Corp.*, 584 F.3d 1 (1st Cir. 2009). Nonetheless, when motions to intervene are filed after judgment is entered, courts often consider whether intervention "will (1) prejudice the rights of existing parties, and (2) interfere with the orderly processes of the court." *Brown v. Bd. of Educ. of Topeka*, 84 F.R.D. 383, 399 (D. Kan. 1979) (citing *Stallworth v. Monsanto*, 558 F.2d 257, 266 (5th Cir. 1977)); *United States v. United States Steel*, 548 F.2d 1232, 1235 (5th Cir. 1977)).

The liens that Mrs. Melot filed on behalf of Mr. Byers on the properties are simply "[a] legal right or interest that a creditor has in another's property, lasting [usually] until a debt or duty that it secures is satisfied." BLACK'S LAW DICTIONARY "lien" (9th ed. 2009). Here, the alleged debt of $652,333.62 was purportedly based on a contract. Thus, to determine whether Mr. Byers has claimed a valid interest, I must determine whether a contract by way of which the Melots incurred a debt to Mr. Byers of $652,333.62 or a contract transferring an interest in the properties from the Melots to Mr. Byers was formed and whether that contract is enforceable. To do so, I must look to general state contract law. *See Harvey E. Yates Co. v. Powell*, 98 F.3d 1222, 1230 (10th Cir. 1996).

In New Mexico, "[f]or a contract to be legally valid and enforceable, it must be factually supported by an offer, an acceptance, consideration, and mutual assent." *Heye v. Am. Golf Corp., Inc.*, 80 P.3d 495, 498 (N.M. Ct. App. 2003) (citation omitted). Even if all of these elements exist, a contract for a transfer of any interest in real property falls within the statute of frauds and

7

must be evidenced in writing. *Walker v. United States*, 162 P.3d 882, 893 (N.M. 2007) (citation omitted). Additionally, a contract in violation of the state's public policy, as manifest in positive law, is unenforceable. *State ex rel. Udall v. Colonial Penn Ins. Co.*, 812 P.2d 777, 784 (N.M. 1991) (citing *DiGesu v. Weingardt*, 575 P.2d 950, 952 (N.M. 1978)). New Mexico law prohibits the unauthorized practice of law.[3] N.M. STAT. ANN. § 36-2-27.

**ANALYSIS**

I.  *Timeliness of the Motion*

While I recognize that intervention as of right should not ordinarily be denied on timeliness grounds, there can be no doubt that Mr. Byers' motion is untimely. He has been intimately involved in this litigation since August of 2010, and he could have filed his motion to intervene at that time. He has unquestionably known of the government's intent to foreclose on the properties since January of 2012, and he could have filed his motion to intervene then. Nonetheless, he waited until nearly two years after he knew of the litigation, nearly half a year after he undisputedly knew of the foreclosure, and two months after the case was closed to file this motion. This motion is not timely, and could be denied on that basis.

II.  *Validity of Lien Interest*

Mr. Byers' interest in the Melots' properties is also invalid for at least two reasons, thus providing multiple bases for the Court to deny the motion to intervene. Mr. Byers testified that his lien interest was based on a contract entered with Mr. Melot. However, Mr. Byers presented nothing demonstrating that the contract was evidenced in a writing. To the extent that the alleged contract provided Mr. Byers with an interest in real property, it is in derogation of the statute of

---

[3] Under the statute, any person practicing law without a certificate of admission to the bar "shall be deemed guilty of contempt of the court in which the violation occurred, as well as of the supreme court of the state . . . ." N.M. STAT. ANN. § 36-2-27. Furthermore, such a person is subject to a civil action by any person likely to be damaged by an unauthorized practice of law, any person who suffers a loss of money or property as a result of an unauthorized practice of law, and/or the attorney general or bar association. *Id.* at §§ 36-2-28.1, 36-2-28.2.

frauds. Because there is no writing memorializing the contract, the contract is unenforceable under the statute of frauds.

Finally, even assuming that the alleged contract did exist and did not violate the statute of frauds, it is unenforceable because it is contrary to public policy. Specifically, the contract, designed to reimburse Mr. Byers for legal assistance,[4] contravenes the express prohibition against the unauthorized practice of law as expressed by the legislature of New Mexico. I have found that Mr. Byers contracted to provide legal assistance to the Melots in the form of preparing motions and other pleadings and providing legal advice. Mr. Byers is not a licensed attorney, and he has not been admitted to any bar to practice law. As an inmate, he cannot be prohibited from assisting other inmates with legal work if the facility does not provide a reasonable alternative.[5] *Johnson v. Avery*, 393 U.S. 483, 490 (1969). However, he may not lawfully charge for this service. *Gometz v. Henman*, 807 F.2d 113, 115 (7th Cir. 1986). Even if he could accept compensation, though, Mr. Byers' incarcerated status does not allow him to prepare legal filings and provide legal advice to free citizens. Thus, even if Mr. Byers' provision of legal assistance to Mr. Melot is not prohibited, the assistance that he provided to Mrs. Melot renders any agreement for reimbursement unenforceable.

In summation, any contract entered between the Melots and Mr. Byers violates the statute of frauds and is unenforceable as a matter of public policy. Thus, Mr. Byers has no valid interest in this case, and his motion should be denied. Because I recommend that the motion to intervene be denied, I do not reach the merits of Mr. Byers' application to stay the proceedings. I

---

[4] Mr. Byers admitted at the hearing that the service he provided in exchange for the interest was assistance in preparing court documents. Moreover, Mr. Melot stated in an email to Mrs, Melot that "the liens are to cover his legal work." (Doc. 241 Ex. 37 at 2.)
[5] Contrary to Mr. Byers' assertion, inmates do not have an absolute right to assist other inmates with legal work. *Johnson*, 393 U.S. at 490.

recommend that it be deemed moot and stricken from the record if the Court adopts my recommended disposition.

Prior to concluding my proposed findings, however, I must express my concern about Mr. Byers' apparent belief that he has an unfettered right to practice law. Based on a communication between the Melots, it appears that Mr. Byers planned to continue his unauthorized practice of law after his release. Mr. Melot told Mrs. Melot in an email on June 2, 2012 that he and Mr. Byers "were planning on him living in one of our houses and setting up his legal work . . . ." (Doc. 241 Ex. 42.) Mr. Byers is advised that any future unauthorized practice of law before any federal court will result in him being held in contempt.

## CONCLUSION

I have found that Mr. Byers knew about this litigation since mid-2010, has been intimately involved in the litigation since that time, and has been providing legal services to both Defendants for nearly two years. I further found that Mr. Byers has not established the existence of a valid contract for an interest in land and, even if he could, such a contract would be invalid as a matter of law. Accordingly, I recommend that the Court:

1. deny Mr. Byers' motion to intervene (Doc. 195) as untimely and because he has no valid, enforceable interest in the litigation;

2. find Mr. Byers' application to stay the proceedings to enforce the final judgment (Doc. 197) moot and strike it from the record; and

3. order that the liens that Mr. Byers filed in Lea County be stricken.

At this point, I cannot recommend the imposition of sanctions, including an award of attorney's fees, for this frivolous motion because any sanction would arise under Federal Rule of Civil Procedure 11, which requires notice and an opportunity to respond. However, the parties

are advised that sanctions may be considered in a future order and/or in any contempt proceedings against Mr. Byers.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.