IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                         CV 09-0752 JCH/WPL

BILLY R. MELOT and
KATHERINE L. MELOT,

    Defendants.

**CERTIFICATION OF CRIMINAL CONTEMPT AS TO KATHERINE L. MELOT**

"I am just more and more shocked and appalled at the games these people play . . . ." (Doc. 241 Ex. 16.) Though Katherine L. Melot presumably made this statement in reference to the United States' efforts to recover on their liens against her and her husband, it aptly describes my sentiment following the July 25, 2012 hearing on Steven M. Byers' Motion to Intervene. During that hearing, facts came to light demonstrating outrageous conduct by Defendant Katherine L. Melot and multiple attempts to conceal her assets and defraud the Court.

Contempt of court occurs when a person (1) misbehaves (2) in or near the presence of the court (3) so as to obstruct the administration of justice (4) with intent, knowledge or willfulness. 18 U.S.C. § 401(a) (2012); *United States v. McGainey*, 37 F.3d 682 (D.C. Cir. 1994); *United States v. Greyhound Corp.*, 508 F.2d 529 (7th Cir. 1974). Criminal contempt also occurs where a person (1) disobeys or resists (2) a lawful order, rule or decree of the court (3) intentionally, knowingly, or recklessly. 18 U.S.C. § 401(c) (2012); *United States v. KS&W Offshore Eng'g, Inc.*, 932 F.2d 906 (11th Cir. 1991).

Where a magistrate judge finds that criminal contempt occurred and he is not presiding with consent, he must certify the contempt to the district court. 28 U.S.C. § 636(e)(6) (2012). The procedure set out by statute is as follows:

> [The magistrate judge shall] certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

*Id.*

This procedure allows the magistrate judge to conduct a hearing in order to certify the facts. *See Taberer v. Armstrong World Indus., Inc.,* 954 F.2d 888, 907-08 (3d Cir. 1992). However, the magistrate judge cannot issue an order of contempt; he or she may only investigate and determine whether further contempt proceedings are warranted. *Id.* The magistrate judge's duty under this subsection is to determine whether the sufficient evidence has been adduced to establish a prima facie case of contempt. *Id.* The certificate functions essentially "as an indictment or charging instrument for the subsequent trial before the district court, rather than as an order to be reviewed by that court." *Id.* at 905. After the facts are certified that support a finding of contempt, the district court must conduct a de novo hearing to make fact and credibility determinations. *Id.* at 907-08.

Accordingly, and in conformity with Rule 42(a) of the Federal Rules of Criminal Procedure and 18 U.S.C. § 401, I hereby certify that the following represents the conduct of Defendant, Katherine L. Melot, as discovered in the course of a hearing held before me on July 25, 2012. I further certify that the acts, statements and conduct hereinafter specified present a prima facie case of contempt of court; that they constituted a deliberate and willful attack upon

the administration of justice in an attempt to sabotage the functioning of the federal judicial system; and that this misconduct was of so grave a character as to disrupt the administration of justice.

1. Mrs. Melot actively attempted to conceal property from the Court and the United States in an effort to subvert the United States' recovery against her, in contravention of the administration of justice. The following statement evinces this act:

    a. In a letter to Mr. Byers on January 9, 2012, "I am in the process of removing a few items from the property as a safety precaution. Wish I had not given them the equipment list that Britton[1] told me to submit." (Doc. 241 Ex. 3.)

2. Mrs. Melot lied to the Court about her income from rental property in pleadings filed in this matter to sabotage the judicial system and receive unwarranted free process. The following evidence supports this conclusion:

    a. In a motion to proceed on appeal in forma pauperis, dated February 16, 2012 and filed with the Court on February 21, 2012, Mrs. Melot advised the Court that she and Mr. Melot earned $0 over the past twelve months in rental income. (Doc. 168 at 3.)

    b. In another motion to proceed on appeal in forma pauperis, dated April 5, 2012 and filed with the Court on April 9, 2012, Mrs. Melot again advised the Court that she and Mr. Melot earned $0 over the past twelve months in rental income. (Doc. 180 at 3.)

    c. In a letter to Mr. Byers on April 7, 2012, Mrs. Melot said, "[A]fter we sent in the In Forma, I learned that my renters will be moving. I will try to make a fast turn

---

[1] William Brittain represented the Melots from May of 2010 to September of 2010.

      around and get a higher price. . . . Renters will be out by the 1st and I cannot let it sit long. Need to fill it fast." (Doc. 241 Ex. 8.)

    d. On April 17, 2012, in a letter to Mr. Byers, Mrs. Melot again referenced getting "a quick turn around on the house" to get more money. (Doc. 241 Ex. 11.)

    e. In an email to Mr. Melot on April 29, 2012, Mrs. Melot discussed their rental property, stating, "I wish I hadn't advertised the house yet, everyone wants to look inside and I cannot take them in it yet. I think it was a waste of money to advertise early." (Doc. 241 Ex. 35.)

    f. In a letter to Mr. Byers on May 23, 2012, Mrs. Melot stated, "Hopefully tomorrow I can focus on the rental." (Doc. 241 Ex. 15.)

3. Mrs. Melot lied to the Court about her cash assets in pleadings filed in this matter to sabotage the judicial system and receive unwarranted free process. The following evidence supports this conclusion:

    a. In a motion to proceed on appeal in forma pauperis, dated February 16, 2012 and filed with the Court on February 21, 2012, Mrs. Melot advised the Court that she and Mr. Melot had only $381.00 in cash. (Doc. 168 at 4.)

    b. In another motion to proceed on appeal in forma pauperis, dated April 5, 2012 and filed with the Court on April 9, 2012, Mrs. Melot advised the Court that she and Mr. Melot had only $300.00 in cash. (Doc. 180 at 4.)

    c. In an email exchange with Mr. Melot on May 21, 2012, Mrs. Melot indicated that she has funds that she did not reveal to the Court. Mr. Melot stated, "I hope you don't have to dip too far into the 50 but I will be out soon and I will start making money. All you have to do is make it until I am released." (Doc. 241 Ex. 40.) Mrs.

      Melot responded, "Doing my best not to dip too hard, but am grateful to have it." (*Id.*) A reasonable person could infer that "the 50" refers to a substantial amount of cash resources that were not reported to the Court.

4. Mrs. Melot assisted Steven M. Byers in an effort to mislead the Court about Mr. Byers' identity and incarcerated status in an effort to delay the administration of justice.

   a. Mrs. Melot obtained a false address for Steven M. Byers (519 W. Copper, Hobbs, NM 88240), included it on pleadings that she typed for him, and did not advise the Court that she had done so.

   b. Mrs. Melot signed documents and had them notarized on behalf of Mr. Byers with a valid power of attorney and did not inform the Court that she was doing so. In a letter to Mr. Byers on May 23, 2012, she indicated that she was signing and having things notarized on Mr. Byers' behalf. She stated "[T]oday I received all the liens back with a note that they had to be notorized. It just so happened that a friend had mentioned that I should see her if I needed anything notarized. So, I redid the bottom of the liens to include a notary stamp and took them to her. With the PA documents, I was able to sign, no problem." (Doc. 241 Ex. 15.)

   c. Even after it became clear that Mr. Byers could not use the Copper address any longer, Mrs. Melot was undeterred from using an address to conceal Mr. Byers' incarcerated status. On June 15, 2012, Mrs. Melot wrote to Mr. Byers, "[W]e need to make address change quick. Yours or mine? Yours would save us postage on the hard copies since they know where you are anyway." (Doc. 241 Ex. 22.)

   d. Mrs. Melot knew that she was misleading the Court. Mrs. Melot reported on June 12, 2012 to Mr. Byers that "[f]riends got a visit today, the one at 519 W. Copper

and the notary. Obviously, this wasn't a good idea. I am worried about what will happen to me." (Doc. 241 Ex. 19.)

5. Mrs. Melot actively and intentionally participated in a scheme to fraudulently create a third party interest in her properties with the intention of defrauding the Court, sabotaging the orderly administration of justice and delaying the United States' lawful efforts to recover the judgment as issued by the Court. The following demonstrates Mrs. Melot's participation in the scheme:

   a. Mrs. Melot repeatedly advised the Court that no liens on the properties existed aside from the IRS liens and that no third parties had an interest in the case. (Doc. 168 at 5; Doc. 180 at 5 ("All personal and Real estate property have Federal Tax Liens and cannot be Liquidated nor used for collateral."); Doc. 241 Ex. 28; Doc. 241 Ex. 29.)

   b. Mrs. Melot then participated in a plan to falsely and fraudulently create a third party interest. In an email to Mr. Melot on April 29, 2012, Mrs. Melot discussed her and Mr. Byers' plan to conceal the properties from the government, stating that Mr. Byers "wants to put liens on all property to him. It is a 'firewall' because they will have to contact him before anything is done and also because it further delays everything. It is just another angle." (Doc. 241 Ex. 35.)

   c. Mrs. Melot assisted Mr. Byers in concealing his identity, as explained above, in an apparent effort to convince the Court that his interest was valid.

   d. Mrs. Melot actively participated in the preparation and filing of fraudulent liens on behalf of Mr. Byers by signing the liens on his behalf, having them notarized, and filing them with Lea County. There is also evidence that she invented the

      amount on the liens. In an undated letter to Mr. Byers, Mrs. Melot asked about how to determine the value of stock and wrote, "I wondered if I am supposed to attempt to come up with a number like the one on the liens." (Doc. 241 Ex. 47.)

    e. In an email to Mr. Melot on June 12, 2012, Mrs. Melot stated, "I am in big trouble. B assured me that everything was legal, but the IRS went to see Misty at the address I was using for him. They also have contacted the notary about the lien papers. I am going to provide the power of attorney to her. I don't want to drag her into this. It isn't her fault. I should have known better. I am worried that I will be arrested. . . . I am worried that we no longer will have someone to help us and lawyers are extremely expensive." (Doc. 241 Ex. 37.)

6. Mrs. Melot actively and willfully participated in a scheme to falsify corporation documents in an effort to conceal her assets, sabotage the United States' efforts to foreclose on her properties, defraud the Court, and subvert the administration of justice. The following constitutes the prima facie case against her:

    a. On June 2, 2012, Mrs. Melot wrote to Mr. Byers, "Regarding transfer of corp. I am waiting to get books from Acton. . . . KI….. [sic] is set up and cannot be changed. I can use PA to transfer deed on that. Most orig deeds are missing or lost. I will try to get copy of orig from courthouse. ME… [sic] was never set up. I can get KI.. [sic] as a guide to make that one from beginning. I have looked up stocks and it appears no notary is required. . . . Must get it right." (Doc. 241 Ex. 17.)

      b. In an undated letter to Mr. Byers, Mrs. Melot indicated that she was attempting to create false documentation in furtherance of this transfer, stating, "I am writing mostly because I do have a few questions regarding stocks. I am totally in the dark and I am not sure about the date or par value. Getting the records will help, but I wondered if you had any suggestions. I have written Bill but I wondered if I am supposed to attempt to come up with a number like the one on the liens." (Doc. 241 Ex. 47.)

    I hereby certify the above facts to the district court on the basis that they demonstrate a prima facie case of six separate acts of criminal contempt committed by Katherine L. Melot. I order the Clerk of Court to serve a summons requiring Mrs. Melot to appear before District Judge Judith C. Herrera on a date to be fixed after consultation with Judge Herrera's chambers. I further order the United States Attorney's Office to prosecute this action. Mrs. Melot is entitled to have counsel represent her in the contempt proceedings before Judge Herrera; if she wishes to be represented but cannot afford counsel, she must apply for the appointment of counsel.

    IT IS SO ORDERED.

                                                          _____
                                                          William P. Lynch
                                                         United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.