IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                         CV 09-0752 JCH/WPL

BILLY R. MELOT and
KATHERINE L. MELOT,

        Defendants.

**CERTIFICATION OF CRIMINAL CONTEMPT AS TO STEVEN M. BYERS**

On July 25, 2012, I held a hearing on Steven M. Byers' Motion to Intervene. During that hearing, facts came to light demonstrating outrageous conduct by Mr. Byers and multiple attempts to conceal assets belonging to Billy R. and Katherine L. Melot and to defraud the Court.

Contempt of court occurs when a person (1) misbehaves (2) in or near the presence of the court (3) so as to obstruct the administration of justice (4) with intent, knowledge or willfulness. 18 U.S.C. § 401(a) (2012); *United States v. McGainey*, 37 F.3d 682 (D.C. Cir. 1994); *United States v. Greyhound Corp.*, 508 F.2d 529 (7th Cir. 1974). Criminal contempt also occurs where a person (1) disobeys or resists (2) a lawful order, rule or decree of the court (3) intentionally, knowingly, or recklessly. 18 U.S.C. § 401(c) (2012); *United States v. KS&W Offshore Eng'g, Inc.*, 932 F.2d 906 (11th Cir. 1991).

Where a magistrate judge finds that criminal contempt occurred and he is not presiding with consent, he must certify the contempt to the district court. 28 U.S.C. § 636(e)(6) (2012). The procedure set out by statute is as follows:

> [The magistrate judge shall] certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

*Id.*

This procedure allows the magistrate judge to conduct a hearing in order to certify the facts. *See Taberer v. Armstrong World Indus., Inc.,* 954 F.2d 888, 907-08 (3d Cir. 1992). However, the magistrate judge cannot issue an order of contempt; he or she may only investigate and determine whether further contempt proceedings are warranted. *Id.* The magistrate judge's duty under this subsection is to determine whether the sufficient evidence has been adduced to establish a prima facie case of contempt. *Id.* The certificate functions essentially "as an indictment or charging instrument for the subsequent trial before the district court, rather than as an order to be reviewed by that court." *Id.* at 905. After the facts are certified that support a finding of contempt, the district court must conduct a de novo hearing to make fact and credibility determinations. *Id.* at 907-08.

Accordingly, and in conformity with Rule 42(a) of the Federal Rules of Criminal Procedure and 18 U.S.C. § 401, I hereby certify that the following represents the conduct of Steven M. Byers as discovered in the course of a hearing held before me on July 25, 2012. I further certify that the acts, statements and conduct hereinafter specified present a prima facie case of contempt of court; that they constituted a deliberate and willful attack upon the administration of justice in an attempt to sabotage the functioning of the federal judicial system; and that this misconduct was of so grave a character as to disrupt the administration of justice.

1. Mr. Byers actively and intentionally attempted to conceal his identity and incarcerated status from the United States and this Court in an effort to mislead the Court and to delay the administration of justice.
    a. Mr. Byers utilized a false address that Mrs. Melot obtained on his behalf and included it on pleadings filed with the Court.
    b. Mr. Byers had Mrs. Melot sign documents and have them notarized on his behalf and with a valid power of attorney, but he did not inform the Court that he had instructed her to do so.
2. Mr. Byers willfully lied and attempted to mislead in pleadings filed with this Court and in testimony presented to this Court in an effort to defraud the Court and prevent it from administering justice.
    a. In his motion to intervene, he represented that he only became aware of "the litigation" recently (Doc. 195 at 1), but the evidence establishes that he has known about the litigation since mid-2010. Mr. Byers admitted that he has been preparing legal documents for Mr. Melot since they were incarcerated together at Lea County Detention Center. Nonetheless, he testified that he had not realized that the United States' intention was to foreclose on the Melots' properties. However, this Court's Memorandum Opinion and Order, issued January 6, 2012, which Mr. Byers admitted that he received of in January of 2012, clearly states, "The United States is entitled to foreclose its tax liens against the properties . . . [and] [t]he United States is entitled to foreclose its tax liens against the Melots' personal property assets[.]" (Doc. 141 at 27.) Further, the Melots quickly submitted an application to stay the enforcement of the judgment, which Mr.

    Byers almost certainly prepared, that acknowledged that the government would be foreclosing on the Defendants' properties, including Mrs. Melot's primary residence. (Doc. 149 at 3.)

b. In his reply to the motion to intervene, Mr. Byers stated that the United States' assertion that he and Mr. Melot met when they were incarcerated in the Lea County Detention Center was a "figmental scenario" that was based on a failure "to properly conduct . . . research" and suggested that "they may have developed a lasting friendship prior to their 'alleged' chance encounter." (Doc. 208 at 2.) However, he admitted at the hearing that he did meet Mr. Melot in the Lea County Detention Center.

c. Mr. Byers testified at the hearing that he was only "vaguely" aware of the litigation and received only "periodic" documents about it. Based on statements made by Mrs. Melot in her letters to Mr. Byers, it is clear that he has been intimately involved in the litigation in this case. He has been handwriting the pleadings for the Melots, which Mrs. Melot types, proofreads, and submits to the Court. (Doc. 241 Exs. 5, 11, & 15.)

d. Mr. Byers also testified that he has only provided legal assistance to Mr. Melot, not to Mrs. Melot. However, as early as August of 2010, a document was filed on behalf of both Mr. and Mrs. Melot that, based on the handwriting, was clearly written by Mr. Byers. (Doc. 27.) Documents filed since that time by the pro se Defendants have been filed jointly, purporting to be on behalf of both Mr. and Mrs. Melot. If that was not sufficient, Mrs. Melot's letters to Mr. Byers repeatedly ask for legal advice. For example, on January 7, 2012, Mrs. Melot wrote Mr.

      Byers a letter quoting the beginning and end of Judge Herrera's Memorandum Opinion and Order and asking, "How long do I have? There is now no hearing right?" (Doc. 241 Ex. 1.) She also asked for his assistance in preparing for the hearing on the motion to intervene, staying "coach me on what to expect and how to answer. I do not want to say the wrong thing." (Doc. 241 Ex. 20.) Finally, in an email to Mr. Melot on June 12, 2012, Mrs. Melot stated "I am worried that we no longer will have someone to help us and lawyers are extremely expensive." (Doc. 241 Ex. 37.)

3. Mr. Byers actively participated in a scheme to fraudulently create a third party interest in the Melots' properties with the intention of defrauding the Court, sabotaging the orderly administration of justice and delaying the United States' lawful efforts to recover the judgment as ordered by the Court. Mr. Byers' participation is evidenced by Mrs. Melot's statement that Mr. Byers "wants to put liens on all property to him. It is a 'firewall' because they will have to contact him before anything is done and also because it further delays everything. It is just another angle." (Doc. 241 Ex. 35.)

4. Mr. Byers coordinated and directed many if not all of the contemptuous acts of the Melots. Mr. Byers improperly provided legal advice and legal representation to the Melots, including suggesting that he put fraudulent liens on their properties (*see* Doc. 241 Ex. 35) and assuring Mrs. Melot that her efforts to conceal his identity were legal. (Doc. 241 Ex. 37.) At the conclusion of the hearing before this Court, Mr. Byers admitted that any contemptuous, fraudulent or misleading actions by the Melots were done at his advisement and asking that any sanctions imposed be directed only against him.

I hereby certify the above facts to the district court on the basis that they demonstrate a prima facie case of four separate acts of criminal contempt committed by Steven M. Byers. I order the Clerk of Court to serve a summons requiring Mr. Byers to appear before District Judge Judith C. Herrera on a date to be fixed after consultation with Judge Herrera's chambers. I further order the United States Attorney's Office to prosecute this action. Mr. Byers is entitled to have counsel represent him in the contempt proceedings before Judge Herrera; if he wishes to be represented but cannot afford counsel, he must apply for the appointment of counsel.

IT IS SO ORDERED.

_William P. Lynch_
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.