## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

       Plaintiff,

v.                                                          **No. 09cv752 JCH/WPL**

**BILLY R. MELOT; KATHERINE L.
MELOT**; **KLM TRUST; C.D. PROPERTIES, INC.;
MELM TRUST; Q.F. MARKETING INC.;
LEIGH CORPORATION; SUZANNE CORPORATION;
MIRROR FARMS, INC.; C.D. EXPRESS, INC.**,

       **Defendants**.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on pro-se Defendants Billy R. Melot's and

Katherine L. Melot's[1] *Motion for New Trial, Altering/Amending Final Judgment, Vacating Order

for Sale*, filed April 19, 2012 [Doc. 185]. The Court will also address the Melots' failure to pay their

past-due appellate filing fees. *See* Doc. 167 at 1 (Tenth Circuit Order noting that the appeal was

premature and that "[t]he $455.00 filing and docketing fee also remains due"). Having considered

the parties' submissions, the summary-judgment record, and the applicable law, the Court will grant

the Melots' motion to alter or amend the Judgment in part; will amend its January 6, 2012

Memorandum Opinion and Order as set forth in this Order, and will set aside its March 21, 2012

Final Judgment and the Judgment Docket entered on October 1, 2012. The Court will temporarily

stay the sale of the Melots' properties. Finally, the Court will order the Melots to pay their past-due

appellate filing fees.

### I. Background

---

[1] Katherine Melot is now represented by an attorney, but previously appeared pro se. *See* Doc. 231. Billy Melot has recently been appointed counsel in regard to potential criminal contempt sanctions. *See* Doc. 264.

The United States filed this action against the Melots and their nominees to reduce to judgment certain federal income-tax assessments against the Melots, to foreclose on federal tax liens on their real property, and to force a sale of those properties under 26 U.S.C. §§ 7401 and 7403[2]. *See* Doc. 33 at 1-2 (Am. Compl.).   On January 6, 2012, the Court granted summary judgment in favor of the United States on all but one of its claims against Billy and Katherine Melot, holding that (i) the United States may foreclose its liens on the real properties in which the Melots have an interest, and which are titled in the names of Defendants/nominees KLM Trust, Leigh Corporation, MELM Trust, Mirror Farms, and Suzanne Corporation; (ii) it may sell the real properties owned by the Melots in the names of those trusts and corporations; (iii) it may sell the Melots' personal property; and (iv) it shall apply the sales proceeds to the Melots' outstanding federal income-tax liabilities for the years 1987-1993.  *See* January 6, 2012 Memorandum Opinion and Order ("Jan. 6, 2012 MOO") at 27.   The Melots filed a premature interlocutory appeal and this Court denied their motion to proceed IFP on appeal.  *See* Docs. 167, 169, 170, 174.  After the Court granted the United States' motion to dismiss its only pending claim against Katherine Melot, the Court entered a final judgment in favor of the United States on March 21, 2012, providing that the relevant properties should be "sold unopposed pursuant to 28 U.S.C. §§ 2001 et seq. or through a receiver/auctioneer under 26 U.S.C. §§ 7402 and 7403."  Doc. 173 at 2.  The Court, however, did not enter a judgment on the United States' claims seeking foreclosure of liens on real properties titled in the names of Q.F. Marketing, Inc. and C.D. Properties, Inc., but mistakenly stated in its final judgment that the

---

[2]  Under § 7403(c), the Court is authorized to "adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States."

claim against Katherine Melot had been "the sole claim remaining after the Court's January 6, 2012 Memorandum Opinion and Order." *Id.* at 2; *see also* Jan. 6, 2012 MOO; Amended Compl. at 9-10, ¶¶ 27-29.

The Melots filed a new notice of appeal on April 4, 2012, *see* Doc. 177, and the Court denied their new motions to proceed IFP on appeal, concluding that their "allegation of poverty is untrue and that they have sufficient income and resources to pay for the cost of their appellate filing fee." Doc. 183 at 1. But instead of filing a subsequent motion to proceed IFP on appeal in the Tenth Circuit as provided by the Rules, *see* Fed. R. App. P. 24(a)(5) (permitting appellant to file motion to proceed IFP in the Court of Appeals within 30 days after notification that the district court has denied the application), the Melots attempted to appeal from this Court's denial of that motion by filing in the Tenth Circuit a document entitled *Motion Appealing District Court's Order Denying Permission to Proceed IFP on Appeal*. Although the motion did nothing more than challenge the denial of permission to proceed IFP on appeal, the Court of Appeals construed the document as a "misdirected amended notice of appeal." *See* Doc. 189 (letter from Clerk of the Tenth Circuit Court of Appeals). The Tenth Circuit ordered the Clerk of this Court to file that document in this case with a filing date of April 30, 2012. *See id.* Accordingly, the Clerk of this Court filed the *Motion Appealing District Court's Order* with the Tenth Circuit's letter, docketing it as an "Amended Notice of Appeal," Doc. 189 & Att. 1, and notified the Tenth Circuit of its filing and of the Court's orders denying the motions to proceed IFP on appeal. *See* Doc. 190.

On April 19, 2012, the Melots filed their motion to alter or amend the March 21, 2012 final judgment and to vacate the order of sale under Rule 59. *See* Doc. 185. On May 16, 2012, the Tenth Circuit abated the appeal, noting that "it appears that the district court has not yet addressed the plaintiff's claims against defendants C.D Properties, Inc. and Q.F. Marketing, Inc." and that "the

3

plaintiff has indicated that it intends to seek dismissal of its claims against C.D Properties, Inc. and

Q.F. Marketing, Inc." Doc. 192 at 1-2[3]. The Tenth Circuit also noted "that the defendants' motion

to alter or amend the judgment (docket entry # 185) remains pending with the district court." *Id.*

at 2. The Tenth Circuit instructed the parties that, "[i]f the pending matters have not been resolved

within 21 days, the parties to this appeal (the Melots **and** the government) shall file status reports -

on the 21st day - advising this court of the status of the district court proceedings." *Id.* (bolding in

original). The Government filed its status report in the Tenth Circuit, but the Melots erroneously

filed their status report in this Court. *See* Doc. 201. The Tenth Circuit entered another order again

noting that the appeal was premature and ordering the Melots to "[e]ither file in this court a motion

for voluntary dismissal of this appeal pursuant to Fed. R. App. P. 42 (b) or do nothing and this court

will dismiss this appeal for failure to prosecute." *United States v. Melot*, No. 12-2055 Doc. 8 (10th

Cir. July 29, 2012). When the Melots failed to act, the Tenth Circuit dismissed the appeal for failure

to prosecute. *See* 09cv752, Doc. 239. The Government obtained a Judgment Docket reflecting the

---

[3]  The Court takes judicial notice that, in its appellate briefing on jurisdictional issues, the
United States stated:

> [i]n its amended complaint, the United States also claimed: (i) that Q.F. Marketing,
> Inc., held title to Tract #5 as Billy R. Melot's nominee or alter ego; (ii) that C.D.
> Properties, Inc., held title to Tract #6 as Billy R. Melot's nominee or alter ego; and
> (iii) that the federal tax liens should be foreclosed on both properties. (Doc. 33 at 9-
> 10, 13.) Those claims, however, were not included in the United States' summary-
> judgment motion (Doc. 68), and they have not yet been resolved. Therefore, the
> trial-court litigation has not yet concluded on the merits.

*United States v. Melot*, No. 12-2055, Doc. 2 at 9 (10th Cir. May 2, 2012). The United States further
stated that, "[o]nce this appeal has been dismissed and jurisdiction has been returned to the District
Court, the United States intends to dismiss its remaining claims. After that dismissal is granted, all
of the claims in the United States' amended complaint will have been resolved." *Id.* n. 4. The
United States later explained that, because Byers filed the motion to intervene and the Court had not
yet ruled on the Melots' motion to set aside the judgment, it would delay dismissing its claims until
it could be sure that it would not be prejudiced by such dismissal. *See id.*, Doc. 7 at 3 (filed May
25, 2012.

amounts reduced to judgment against each Defendant individually on October 1, 2012.  *See* Doc. 266.

## II. Analysis

### A. Background undisputed facts.

The Government's burden to establish its right to money judgments against the Melots and to foreclose on its income-tax liens was not a heavy one.  To reduce the tax assessments to money judgments,

> the government generally establishes a prima facie case when it shows a timely assessment of the tax due, supported by a minimal evidentiary foundation, at which point a presumption of correctness arises.  A presumption of correctness attaches to the Commissioner's assessment, once some substantive evidence is introduced demonstrating that the taxpayer received unreported income.

*United States v. McMullin*, 948 F.2d 1188, 1192 (10th Cir. 1991) (citation omitted).  As noted in the Jan. 6, 2012 MOO, the United States presented testimony of Revenue Agent Denese Baker and documentary evidence that the Melots received unreported income from several businesses and rental properties between 1987 and 1993.  When the Melots failed to file income-tax returns, the IRS prepared substitute returns, choosing to treat the Melots as married persons filing separately and preparing separate returns for each of the Melots[4].  Based on these substitute returns, the IRS timely

---

[4] Under 26 U.S.C. § 6020(b), "If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise. . . .Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes." "The election to file a separate return having been made for him by the Commissioner, the taxpayer is now in the same position as if he himself had elected to file, and did file, a separate return." *Smalldridge v. C.I.R.*, 804 F.2d 125, 128 (10th Cir. 1986).  The IRS's decision to file separate returns for the Melots has legal significance because "if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several."  16 U.S.C. § 6013(d)(3).  Conversely, if the Commissioner files separate returns for married taxpayers, the tax for each is computed on *one-half* of the aggregate income, and individual

"issued three separate Statutory Notices of Deficiency for the 1987-1993 tax years" to each of the Melots to notify them of their tax liabilities.  Jan. 6, 2012 MOO at 6.

The Court has, in resolving the Melots' motion to alter or amend the judgment, again carefully reviewed Agent Baker's testimony and the relevant exhibits in this case, and concludes that the United States has conclusively established that the Melots, in fact, received significant unreported income from several jointly-owned businesses and properties between 1987 and 1993, and that the IRS timely issued notices of deficiencies ("NODs") to each of them for those years. *See*, *e.g.,* Doc. 105, Ex. 5 (January 19, 2000 NOD sent to Billy Melot for tax years 1987-89 based on the total tax liabilities for those years after considering the total income and deductions for all of the Melots' businesses and based on a tax rate for returns filed by married individuals who file separate returns, and imposing significant failure-to-file penalties, and sent to Billy Melot by certified mail); Doc. 104, Ex. 6 (same for tax year 1990); Doc. 108, Ex. 7 (same, for tax years 1991-1993).

The IRS sent different NODs to Katherine Melot, however, basing **_her_** tax liability on the very same figures, but splitting in half the income and deductions[5].  *See* Doc. 107, Ex. 4 at 10-13 (Baker Aff. explaining that she based Katherine Melot's liability on a community-property split of the total figures used to calculate the Melots' total income and deductions); Doc. 107, Att. 5, Ex.

---

liability is based only on the separate return, as demonstrated by the Government's efforts to obtain judgments against each individual Defendant in this case.

[5]  Nowhere does the Government explain why, in preparing the separate substitute returns, it based Billy's individual liability on the total taxable community income and Katherine's individual liability on half that taxable income, contrary to *United States v. Mitchell*, 403 U.S. 190, 196 (1971) – as discussed, *infra*.  Because it was the Government's duty, in the first instance, to prove liability and a right to reduce the assessments to judgments with consistent evidence, the Court has reconsidered its judgment notwithstanding the Melots' failures to specifically challenge this glaring discrepancy.

4-I (Baker's exhibit showing the total income and deductions for tax years 1987-1993 as well as the

"community property split" figures for Billy and Katherine Melot); Doc. 108, Att. 2, Ex. 8 (January

19, 2000 NOD sent to Katherine for tax years 1987-89 based on half of the community

income/deductions, and imposing additional, significant failure-to-file and failure-to-pay-estimated-

taxes penalties); Doc. 101, Ex. 9(same for tax year 1990); Doc. 109, Ex. 10 (same for tax years

1991-1993).

> The notice of deficiency begins the interaction between the taxpayer and the IRS. Upon the determination that a tax deficiency exists, I.R.C. § 6212 (1988) authorizes the IRS to send a notice of the deficiency to the taxpayer at his last known address. Under I.R.C. § 6213, the taxpayer ordinarily has ninety days after the mailing of the notice of deficiency to file a petition in the Tax Court challenging the deficiency determination. If the taxpayer goes to Tax Court, he may obtain a redetermination of deficiency, which amount is not assessed or required to be paid until the Tax Court decision has become final. *See* I.R.C. §§ 6213(a), 6215. The notice of deficiency is thus the "ticket" to the Tax Court that allows the taxpayer to challenge the tax assessment before paying it.

> If the taxpayer does not go to Tax Court within ninety days, the IRS is authorized to assess the deficiency against the taxpayer, who must pay upon notice and demand. *See* I.R.C. § 6213(c). The IRS must give this notice, containing the amount and a demand for payment, within sixty days of making the assessment. *See* I.R.C. § 6303(a). If the deficiency is not paid, a lien arises in favor of the United States on all real and personal property of the taxpayer, *see* I.R.C. § 6321, as of the time the assessment is made, *see* I.R.C. § 6322. The IRS is also authorized to levy upon the taxpayer's property, after notice, to recover unpaid taxes. *See* I.R.C. § 6331.

*Guthrie v. Sawyer*, 970 F.2d 733, 735 (10th Cir. 1992). Because Billy Melot received the notices

of deficiency but "failed to petition the United States Tax Court to contest the methods of

assessments or the amount of their tax liabilities, . . . [o]n June 5, 2000, the IRS assessed the total

corrected tax liabilities, penalties, and additions to tax as set forth in the Notices of Deficiency . .

. . reflect[ing] a corrected tax liability, failure to file penalties, and failure to pay estimated tax

penalties for the 1987-1993 tax years totaling $4,604,754[6]," and issued "Forms 4340 Certificate of Assessments and Payments" on June 5, 2000. *See* Jan. 6, 2012 MOO at 6, 7; Doc. 103, Ex. 1. The resulting Certificates of Assessment added enormous interest amounts to the amounts owed to the IRS. *See* Doc. 103, Ex. 1 at 3, 7, 11, 15, 19. But again, a careful review of the record shows that the Certificates of Assessments issued to Billy Melot were based on the Melots' **total taxable income** from years 1987-1993, and not on a community-property split of the taxable amounts. *See id.* The IRS, however, again sent separate Certificates of Assessment to Katherine Melot, with her tax liability again based on a community-property split. *See* Doc.103, Ex. 2 at 4, 8, 12, 16, 20, 24, 28.

Those Certificates of Assessment created a presumption that a Summary Record of Assessment was executed, certified, and provided to the Melots. *See March v. IRS*, 335 F.3d 1186, 1189 (10th Cir. 2003).

When the Melots failed to pay the deficiencies, in October 2001, the IRS filed Notices of Federal Tax Lien with the County Clerk of Lea County on the Melots' property and gave each of the Melots notice of the liens. *See* Jan. 6, 2012 MOO at 6-7. The tax lien naming Billy Melot was based upon the amounts set forth in Billy Melot's 1987-1993 Certificates of Assessment issued June 5, 2000. *See* Doc. 100, Ex. 14 (October 12, 2001 Notice of Federal Tax Lien sent to Billy Melot). The tax lien for Katherine Melot was based on the amounts set forth in Katherine's 1987-1993 and 1996 Certificates of Assessment. *See* Doc. 99, Ex. 15 (Oct. 12, 2001 Notice of Federal Tax Lien sent to Katherine Melot). Both Billy and Katherine returned the notices of tax lien to the IRS with

---

[6] $4,604,754 is the total amount of taxes and penalties due and owing on **all** of the Melots' unreported income from 1987-93 as set forth in the January 19, 2000 Notices of Deficiency sent to Billy Melot. *See* Docs. 105, Ex. 5; Doc. 104, Ex. 6; and Doc. 108, Ex. 7.

the following statements hand-written above their signatures:

> I hereby refute and invalidate the presentment without dishonor.  I do not owe this
> or any amount of money.  All rights reserved without prejudice, UCC 1-207.

Doc. 100, Ex. 14, Doc. 99, Ex. 15.  In March 2002, they also both filed identical challenges and

claims for release of the liens, stating that they were **not** attempting to "challenge the underlying

merits related to the  amount of the purported tax liability" but making various, discredited tax

protestor arguments, including assertions that the income tax laws are unconstitutional.  *See* Doc

100, Ex. 14 at 3; Doc. 99, Ex. 15 at 3.  The Government re-filed its lien against Billy Melot on

October 5, 2009, based on unpaid taxes from 1987-1992.  *See* Doc. 98, Ex. 16 at 3.  On March 18,

2011, the Government again refiled its tax lien against Billy Melot for tax years 1987-1993, but this

time it reduced the "unpaid balance" for tax year 1987 from $953,273 to $946,495.  *See* Doc. 116,

Att. 6, Ex. 58.  According to the March 18, 2011 lien, the total unpaid balance still due from Billy

Melot, is $9,822,671.99.  *See id.*

As noted in the Jan. 6, 2012 MOO, the United States established with unrebutted testimony

that the Melots have failed and refused to pay the tax assessments.  *See* Doc. 141 at 6.  The Court

relied on Agent Baker's affidavit and a government exhibit setting forth the original total tax

liabilities, including penalties and additional statutory interest,  to conclude that Billy Melot still

owes $18,493,098.51 as of August 11, 2009, notwithstanding the amount on the Government's

March 18, 2011 recorded lien, and notwithstanding the assessment amounts set forth in the January

19, 2000 NODs.  *See id.*  After reviewing the Melots' affidavits and evidence, the Court held that

they failed to present "evidence to overcome the presumption of correctness attached to the IRS's

Certificates of Assessments and Payments," and concluded that the United States was entitled to

summary judgment on its request for a money judgment.  *Id.* at 9.

9

**B.  The Melots are entitled to limited relief under Rule 59 on the amounts reduced to judgment.**

The United States does not specifically address any of the Melots' arguments for reconsideration, instead contending only that none of them meet the standard for altering or amending a judgment under Rule 59(e).  *See* Doc. 186.  Rule 59(e) motions may be granted if there is "the need to correct clear error or prevent manifest injustice," as "where the court has misapprehended the facts, a party's position, or the controlling law."  *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  Reconsideration is not "appropriate to revisit issues already addressed" when a party disagrees with the court's legal conclusions.  *Id.*

**i.  The Melots cannot challenge the amounts of the underlying assessments or methodologies used to determine their tax liabilities.**

In their motion to alter or amend the judgment, the Melots continue to attempt to challenge the *underlying original assessments* and the methodologies the IRS agent used in arriving at the deficiencies and tax liabilities in 1999-2000.  But

> [a] taxpayer who wishes to challenge the activities of the IRS in sending a notice of deficiency or issuing a notice of assessment and demand for payment must bring suit under a statute that waives the sovereign immunity of the United States.  *See generally United States v. Dalm*, 494 U.S. 596, 110 S.Ct. 1361, 108 L. Ed. 2d 548 (1990).FN2  The Anti-Injunction Act, 26 U.S.C. § 7421 (1988), prohibits suits restraining the assessment or collection of taxes, with a significant exception . . . .  Section 6213(a) of the Act specifically authorizes an injunction prohibiting an assessment or levy when the taxpayer has not received a notice of deficiency.

*Guthrie*, 970 F.2d at 735.  The taxpayer who, as in this case, has received a notice of deficiency, cannot ignore the notice of deficiency, forego his opportunity to challenge it in the Tax Court, and then attempt to challenge the methodology and/or amount of the deficiency and resulting assessment in subsequent proceedings brought by the United States to reduce the assessment to a money

judgment.  *See id.*; *Vance v. United States ex rel. Dowie*, 109 Fed. App'x 294, 296, 2004 WL
2005930, *2 (10th Cir. 2004) (concluding that, because the taxpayer "had the opportunity . . . to
challenge the tax assessments and liens in Tax Court," he could not later "attempt to litigate or
relitigate those issues years later" by "collaterally attacking the assessments" in a separate suit in
district court).  Thus, the Melots' contentions that there are genuine issues of material fact whether
the proper profit margin for their businesses was used, or what was their actual taxable income; and
their contention that "almost half of [the tax loss] comes from taxes that [the Melots] already paid
to the state of Texas," and that they "did not earn significant income" from the businesses they
operated, *see* Doc. 113 at 1-2, are not properly before this Court.  Accordingly, their current
contentions on reconsideration reiterating those arguments, *see* Doc. 185 at 3-7, are not a valid basis
for reconsideration.

> **ii.  The Melots did not timely file tax returns, thus the IRS had authority to
> prepare substitute returns.**

The Melots contend that documentary evidence proves that they did, in fact, file tax returns
for the years 1987-1993, but that the IRS failed to process them for some unknown reason, and that,
therefore, the IRS did not have statutory authority to prepare the substitute returns that resulted in
the certificates of assessment.  *See* Doc. 113 at 5-6; Doc. 185 at 5-7.  What the Melots' documentary
evidence shows, however, is only that the Melots filed "zero returns," which are returns with zeros
placed in all of the blanks in which a taxpayer is to record his/her income and expenses, for tax years
1987-93 at some point **after** the IRS had prepared the substitute returns and notified them of their
delinquent taxes.  *See* Doc. 113, Ex. A (copy of a page of the Government's brief in *U.S. v. Melot*,
No. 2:09cr2258 Doc. 165 at 8, filed Jan. 24, 2011, in which the Government states that Katherine
Melot "filed 'zero returns' with the IRS to attempt to eliminate her properly assessed tax liabilities

for 1987-1993.  These returns would further stymie the collection process had they been processed.").  And in his August 23, 1999 letter to the IRS, Melot states that he "was not legally required to file a form 1040 for any year [and] incurred no tax liability . . . in 1986 or any year after" and that he "did not file a 1040 form."  Doc. 92, Ex. 45 at 1, 2.  There is no genuine  issue of material fact whether the IRS had statutory authority to prepare the substitute returns - it clearly did.

### iii.  Documentary evidence establishes that the IRS followed proper procedures.

The Melots also contend that the documentary evidence proves that they did not receive the 30-day notice-of-taxes-due letter – apparently because the amounts due on the letter conflict with the amounts due in the NODs - and that they never received the three NODs because the Certificates of Assessment contain a note stating "Additional Tax Assessed by Examination Audit Deficiency - 90 Day letter undeliverable" next to the date of 6-5-2000.  *See* Doc. 185 at 5 (arguing that the Court "based its opinion on misrepresentation by the Government").  The record conclusively demonstrates, however, that the Melots each signed for the 30-day-notice-of-taxes due letters on July 1, 1999.  *See* Doc. 116, Att. 4, Ex. 56 at 4-5, 10-11.  That the amounts due in the 30-day-letter are different than the amounts due reflected in the NODs does not make the 30-day letters ineffective - they expressly state that the amounts are only proposed and may not reflect amounts also due from corporations, partnerships, or other businesses.  *See id.* at 1, 6.

And the fact that the NODs were "returned to the IRS as 'undeliverable' does not render the notice of deficiency ineffective. . . . [S]uch notices are valid irrespective of their receipt as long as they are sent to a taxpayer's last known address." *Gille v. United States*,  33 F.3d 46, 48 (10th Cir. 1994); *Guthrie*, 970 F.2d at 737 ("The IRS satisfies its obligation to mail a notice of deficiency if the notice is sent to the taxpayer's last known address, even if the taxpayer does not actually receive the notice); *see* 26 U.S.C.A. § 6212(b)(1).  Here, the United States showed that it sent the NODs

12

by certified mail to the Melots' last-known address, which is still their home address.  That the Melots may have refused to sign for them does not mean that the NODs were not valid or that the IRS failed to follow statutory procedure.

### iv.  It is not unnecessarily harsh to order a foreclosure sale without redemption.

The Melots also complain that ordering a foreclosure sale without permitting them a right of redemption is "unnecessarily harsh," given what the Melots consider to be errors in the *methodology* of determining their tax liabilities and their allegations that the Certificates of Assessment say that they did not receive the NODs.  *See* Doc. 185 at 6.  In support, they cite *United States v. Kilgore*, No. 93-1094-PFK,  1994 WL 401066, *2 (D. Kan. Jul 05, 1994), an unreported case from the District of Kansas in which the district judge permitted defaulting mortgagors an equitable opportunity to redeem a judicially foreclosed property under 28 U.S.C. § 2001 after noting that a portion of the statute provides that "[s]uch sale shall be upon such terms and conditions as the court directs."   The United States does not specifically respond to this argument.  Nevertheless, the Court notes that § 2001 does not provide for a right of redemption, and that § 2001 provides only that, if the court permits a private, instead of public sale, it may authorize a "private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved." § 2001(b).   Those are not the circumstances of this case.  Further, the Melots have repeatedly claimed that they are destitute and without any assets that could be used to redeem their properties, so it would be futile to grant them a right of redemption.

### v.  Denying summary judgment in favor of the United States on Katherine Melot's 1996 tax liability does not affect the Government's right to judgment regarding other tax years.

The Melots next argue that, because the Court denied summary judgment in favor of the

United States on its claims against Katherine Melot for tax year 1996, *see* Doc. 141 at 6, that summary judgment on its claims against her regarding tax years 1987-1993 should not have been granted. *See* Doc. 185 at 7. The Court rejects this argument as baseless.

**vi. The Court did not base its judgment or conclusions on Billy Melot's criminal proceedings.**

The Melots contend that the Court erred by "using evidence that only pertained to defendant Mr. Melot against Ms. Melot." Doc. 185 at 11. The Court's opinion clearly demonstrates, however, that the Court referred to Billy Melot's criminal proceedings only to demonstrate that he had never successfully challenged the Government's methodology in computing his taxes, and that he continued to fail to do so in this case. The Court relied on documentary evidence pertinent to Katherine Melot when determining whether the Certificates of Assessment pertaining to her should be reduced to judgment. The Court therefore rejects this argument and Melot's argument that it should have addressed the doctrine of *res judicata* regarding the effect of Billy's Melot's criminal judgment. That doctrine was not raised by the Government as a basis for summary judgment - the Government simply responded in its reply brief that similar arguments Mr. Melot's attorney had made at his sentencing proceeding during his criminal trial were rejected by the district judge presiding in that case. The Court granted summary judgment in favor of the United States on the undisputed exhibits and testimony presented in the summary-judgment record.

**vii. The Court committed clear error when it granted summary judgment in the amount of $18,238,268.65 against Billy Melot individually and $9,321,097.60 against Katherine Melot individually[7].**

---

[7] The Court notes that, although the Government's summary-judgment motion requested greater total amounts due based on additional interest accrued by August 11, 2009, and it based its

The Melots argue that the Court committed plain error when it failed to deduct from the amounts still due to the Government taxes that already have been paid by levy over two years ago when the IRS directed the renter of the Defendants' Smoke Shop to send the rent payments to the IRS instead of to the Melots. *See* Doc. 185 at 8. In support, the Melots attach a copy of the Government's brief filed in Billy Melot's criminal trial on September 24, 2010, in which the Government states, "the IRS has only collected $2000 from levies on the rent from Defendant's smoke shop." Doc. 113, Ex. T. Again, the Government does not address this issue. The Court agrees that the United States is not entitled to a judgment on taxes that have been paid, but the Court disagrees that the Melots are entitled to a full trial on all issues. As noted, *supra*, the Government reduced the amount Billy Melot still owes in its 1987 figures under "unpaid balance" in the March 19, 2011 lien. *See* Doc. 116, Att. 6, Ex. 58. The Court concludes that it should have reduced the amounts to which the Government is entitled to a judgment against each Defendant by half of the amount the Government indicates has been levied.

The Court further *sua sponte* notes, however, that the Government has erroneously based its NODs and Certificates of Assessment, and, therefore, its request for judgment against Billy Melot on the total community tax liability, instead of only on half of that liability. In the March 21, 2012 Memorandum Opinion and Order, the Court noted that, under "*United States v. Mitchell*, 403 U.S. 190, 196 (1971), [] a spouse in a community property state is liable for tax on one-half of all income received by the other spouse during the marriage because spouses in community property states have a vested interest in one-half of that income." March 21, 2012 MOO at 3 [Doc. 172]. In reviewing

---

testimony and evidentiary exhibit only on the greater amount, *see* Doc. 68 at 7 ¶ 11 and at 9 ¶ 16, the Court granted judgment only on the amounts set forth at paragraphs 14 and 17 of the Amended Complaint, on amounts due through March 31, 2009. *See* Jan. 6, 2012 MOO at 27.

Agent Baker's testimony and comparing the exhibits in response to the Melots' contention on reconsideration that the Government's exhibits are internally inconsistent, the Court concludes that the Government has conclusively established that, when computing Billy Melot's separate tax liability that **should** have been based on only one-half of the income and deductions arising from the Melots' community business activities and interest income, it erroneously computed his individual liability based on the **total** taxable community income, while permitting exemptions and deductions only for himself as an individual. *Cf.* Doc. 116, Att. 4, Ex. 56 at 4-5, 10-11 (30-day letters sent to the Melots that equally divide the proposed tax assessments between Billy and Katherine), *and* Doc. 107, Att. 5, Ex. 4-1 (exhibit showing how the total community income and deductions should be equally distributed between Billy and Katherine) *with* Docs. 105, Ex. 5; Doc. 104, Ex. 6; Doc. 108, Ex. 7 (NODs sent to Billy that are based on the total community tax liability) *and* Doc. 108, Ex. 8; Doc. 101, Ex. 9; Doc. 109, Ex. 10  (NODs for Katherine based on only one-half of the total community tax liability) and Doc. 103, Ex. 1 (Certificates of Assessment for Billy that are based on the total community tax liability) and Doc.103, Ex. 2 (Certificates of Assessment for Katherine that are based on one-half of the total community tax liability).  The Government cannot compute a community tax liability based on all the community income and deductions and assess the full amount against one spouse *and* assess one-half of that amount a second time against the other spouse.  It seems clear that the IRS intended to assess each spouse liability for only one-half of the total community tax liability, as required by *Mitchell*, 403 U.S. at 196.

But all is not lost, and the Court need only amend its judgment to reflect the proper division of taxes between the Defendants, based upon Billy Melot's NODs and Certificates of Assessment, which computed the total community tax liability and are presumptively correct and which are abundantly supported by the evidence in the record.  The United States, however, must submit to

16

the Court a properly calculated total amount of taxes due as of March 31, 2009, as discussed below.

The Court further *sua sponte* notes that Government Exhibit 12 (found at Doc. 100 at 1), on which the Government and the Court exclusively relied to determine the amount of the total community tax liability due and owing after penalties and interest is added, appears to be flawed. The Government's summary-judgment motion cites, as proof of the amount that Billy and Katherine still owe, Government's Ex. 1 (NODs attaching explanations for assessments and penalties on total community tax liability), Ex. 4 at ¶ 15 (Agent Baker's affidavit relying on Ex. 12 for total amount), and Government's Ex. 12, which is a table showing the total amounts due as of August 11, 2009. *See* Doc. 68 at 7, 9. But Exhibit 12 appears to erroneously double count the failure-to-pay penalty for each tax year, which has already been included in the "assessment" column of that exhibit. For example, in 1987, the total community tax underpayment assessment was $330,186.38, which included $253,260 in unpaid taxes and both a $63,315 delinquent-tax penalty and a $13,595 estimated-tax penalty. *See* Doc. 105, Ex. 5 at 3; *id.*, Att. 2 at 4; *id.* Att. 3 at 2; *see also* Doc. 103, Ex. 1 at 2. But the Government's Exhibit 12 lists $330,186.38 as the "assessment" and then adds an **additional** $63,315 "failure to pay" penalty in the next column, and that is true of every tax year, for a total of $880,736.25 in apparent overcharges. Doc. 100 at 1. The Court does not know whether the "total interest" column for each year is calculated on only the "assessment" amounts or on the assessment amount plus the additional penalty amount, and no affidavit explains the calculations. Therefore, the Court will give the United States an opportunity to correct Exhibit 12, with supporting affidavits and explanation of the interest rate used, and establish the correct amount of taxes due and owing for each Defendant, including interest to March 31, 2009. *See* Fed. R. Civ. P. 56(f) (providing that, if the court gives the parties "notice and a reasonable time to respond," it may "consider summary judgment on its own after identifying for

17

the parties material facts that may not be genuinely in dispute"). The affidavits shall discuss, and

the modified Exhibit shall also reflect, the reduction of past-due taxes in the amount of either $2000

or $6778 that was apparently collected through levy on the Melots' smoke-shop rent or by any other

levy.  The Melots will then have an opportunity to contest or otherwise challenge the resulting

affidavit and modified Exhibit.  The Court will then enter an amended final judgment if there is no

genuine issue of disputed fact as to each Defendant's individual tax liability for one-half of the total

amount.

**C.  Reconsideration is not appropriate for the judgment based on federal excise taxes.**

**i.  The Melots have failed to show prejudicial discrepancies in the amounts of
federal fuel excise taxes due to the Government.**

The Melots next again contend that there are four discrepancies between the amounts of

excise taxes  the Government claims are still due to it and the amount the IRS actually assessed in

the Notices of Deficiency regarding failure-to-file penalties for tax periods ending March 31, 1989,

June 30, 1993, September 30, 1993, and December 21, 1993.  Doc. 185 at 8-9, Doc. 113 at 10.

Because the Court did not state why it rejected this argument in its Jan. 6, 2012 MOO, it will do so

now.  A review of the Melot's chart demonstrating that there are, indeed, four discrepancies, also

demonstrate that the discrepancies in the amounts claimed and the amounts assessed for tax periods

ending June 30, September 30, and December 31, 1993 actually resulted in  a **benefit** of $7579 in

the **Melots'** favor.  When the March 31, 1989 discrepancy in the Government's favor of $360 is

subtracted from that amount, the Melots still benefitted by $7219.

**ii.  Melot's federal excise taxes were not determined and assessed on the same**

day.[8]

In their briefing in response to the Government's motion for summary judgment on the unpaid excise taxes, citing *Bromberg v. Ingling*, 300 F.2d 859, 861 (9th Cir. 1962) (noting that, "[t]he 90-day letter is a notice of the commissioner's determination, and according to the statutory scheme, absent jeopardy, must precede assessment") the Melots argued that

> the Government violated Defendant's rights when the IRS assessed the Melots' tax liability <u>simultaneously</u> with the announcement of the tax deficiency. It was not valid and the Melots were entitled to the same 90-day notice <u>before</u> assessment as if they had a right to a tax court review . . . [and they were] deprived [] of their right to challenge the tax liabilities.

Doc. 113 at 9. In support, they based their claim solely on the fact that the Certificates of Assessment for the excise taxes indicate that taxes were assessed on December 20, 1999, and a "statutory notice of balance due" was issued that same date. *See id.*; Doc. 113 Att. 1, Ex. K at 1-2. The Government, however, submitted as part of its summary-judgment evidence regarding the excise taxes a Form 886–A[9], Explanation of Items, which determines the amount of taxes past due, and the date of that report is June 19, 1999, over six months **before** the certificates of assessment were issued. *See* Doc. 111, Ex. 13 and Att. 1 at 3. That report notes that the examiner met with Billy Melot to specifically discuss his challenge to the IRS's notice that it was going to impose excise taxes before the NOD was issued. *See, e.g. id.* at 3, 4 (discussing conversations with Melot in preparing substitute tax returns and noting that Melot "was not cooperative during this exam and

---

[8] Although the Court addressed the Melots' similar claims regarding their personal taxes in the January 6, 2011 opinion, the Government did not respond to this specific argument regarding the excise taxes, and the Court did not address it in the opinion.

[9] Forms 886-A are attached to a notice of deficiency. *See Rospond v. C.I.R.*, T.C. Summ.Op. 2012-47, 2012 WL 1842657 *2 (T. Ct. May 21, 2012); *see* Doc. 105, Ex. 5, Att. 1 at 2 (form 886-A attached to Billy Melot's NOD for his 1987-1989 personal taxes).

gave no position"). Melot did not file an affidavit swearing that he did *not* receive an NOD, and he clearly was given an opportunity to challenge the Government's substitute returns and request a redetermination of excise taxes in the Tax Court before the Certificates of Assessment were issued. There is no genuine issue of material fact regarding whether the IRS determined Melot's past-due excise taxes at least 90 days before it issued the certificates of assessment.

**D. The Government's tax liens are enforceable notwithstanding the fact that the recorded liens may contain inexact information**.

The Melots contend that, because the tax liens in Billy and Katherine's name that are recorded in Lea County may include some incorrect information, the Court erred in "validating" the liens. Doc. 185 at 9. The Court disagrees. First, the Court notes that the March 18, 2011 lien against Billy Melot reflects a $6778 reduction in the "unpaid balance" column, in comparison to the 2009 lien, which exceeds the amount of levy the IRS stated in received from the smoke shop, so that lien correctly reflects a reduction in taxes owed. *See* Doc. 116, Att. 6, Ex. 58 at 1. The Court also notes that the March 18, 2011 recorded lien against Kathleen no longer contains the unpaid balance due from the 1996 tax liability. *See id.* at 2. To be entitled to enforce its tax liens, the United States had to prove only that it has federal tax liens that arose at the time the Melots failed to pay the taxes assessed against them. *See* 26 U.S.C. §§ 6321, 6322; *Gardner v. United States*, 34 F.3d 985, 987 (10th Cir.1994). The Court has determined that the Government is entitled to foreclose on its tax liens against the Melots and nominee or alter-ego entities, *see* Jan. 6, 2012 MOO at 16, and that ruling is still valid.

> A federal tax lien, described as a "secret lien," *see United States v. Security Trust & Savings Bank*, 340 U.S. 47, 53, 71 S. Ct. 111, 114, 95 L. Ed. 53 (1950) (Jackson, J., concurring) (citation omitted), is effective upon assessment against all persons, even in the absence of recordation of the lien. *See Rice Investment Co. v. United States*, 625 F.2d 565, 568 (5th Cir.1980). However, under 26 U.S.C. § 6323(a), certain

persons are protected against unrecorded federal tax liens.

*Don King Prod., Inc. v. Thomas*, 945 F.2d 529, 533 (2nd Cir. 1991).  The persons owing taxes are not protected against unrecorded tax liens; those liens are valid until the taxes are paid in full or become uncollectible upon expiration of the statute of limitations. 26 U.S.C. § 6322.  Thus, because it is undisputed that the Melots still owe a significant amount of taxes that far exceed the value of their real property, whether or not the Government's lien is recorded, it is valid, and the Court may order its enforcement.  *See United States v. Dawes*, No. 04-3454, 161 Fed. App'x 742, 746, 2005 WL 3278027, *2 (10th Cir. Dec. 5, 2005).  After the Court enters its final judgment as to the amount of tax, penalties, and interest still due and owing, the Government may record amended tax liens, which are to be enforced.

**Conclusion.**

Because the Melots are each separately liable for only one-half of the total community tax liability that has not yet been paid, and because the United States has conclusively established the proper amount of the **original** community assessments and penalties, the only genuine issue of material fact is the exact amount still due and owing from each Defendant on March 31, 2009. Therefore, the Court will set aside and amend the March 21, 2012 final judgment as to the amounts due from Katherine and Billy Melot individually on their personal taxes.  The Court will not modify, however, its rulings that

> [t]he United States is entitled to foreclose its tax liens against the properties discussed in the Memorandum Opinion and Order and is also entitled to foreclose its tax liens against the Melots' personal property assets, and such property will be sold unopposed pursuant to 28 U.S.C. §§ 2001 et seq. or through a receiver/auctioneer under 26 U.S.C. §§ 7402 and 7403. The sales proceeds from the personal property assets and real property shall be applied to Defendant Billy Melot's outstanding federal tax liabilities for the 1987-1993 tax years and to Defendant Katherine Melot's outstanding federal tax liabilities for the 1987-1993 tax years.

Doc. 173 at 2.  The Court will stay the order of sale until the Court determines the exact amount of taxes that each of the Melots still owe the Government as of March 31, 2009.

**THEREFORE, IT IS ORDERED** that the Defendants' motion for new trial or to alter or amend the judgment and to vacate the sale [Doc. 185] is GRANTED IN PART AND DENIED IN PART, as set forth above, and the final Judgment [Doc. 173] and Judgment Docket [Doc. 266] are set aside;

**IT IS FURTHER ORDERED** that the United States shall present to the Court and the Defendants, within 10 days of the filing of this Order, an affidavit and exhibit properly computing the taxes due and owing from each individual Defendant as of March 31, 2009, as set forth above, and that the Melots shall then have 14 days to object to or otherwise challenge that affidavit and exhibit, if they so desire;

**IT IS FURTHER ORDERED** that the sale of the Melots' properties is stayed until further notice by the Court;

**IT IS FURTHER ORDERED** that the Melots shall pay their past-due appellate filing fees of $455 for their interlocutory appeal, as required by the Tenth Circuit, *see* Doc. 167 at 1, within 14 days of the filing of this Order.

_____
UNITED STATES DISTRICT JUDGE