IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.                                                   No. 09cv752 JCH/WPL

**BILLY R. MELOT; KATHERINE L.
MELOT**; **KLM TRUST; C.D. PROPERTIES, INC.;
MELM TRUST; Q.F. MARKETING INC.;
LEIGH CORPORATION; SUZANNE CORPORATION;
MIRROR FARMS, INC.; C.D. EXPRESS, INC.**,

    **Defendants**.

## ORDER VACATING CRIMINAL CONTEMPT PROCEEDINGS , TERMINATING THE APPOINTMENT OF CJA COUNSEL and IMPOSING SANCTIONS ON BILLY AND KATHERINE MELOT AND STEPHEN BYERS

**THIS MATTER** comes before the Court on the three *Certifications of Criminal Contempt* as to Billy R. Melot, Katherine L. Melot, and Stephen M. Byers, filed August 6, 2012 (Docs. 245, 246, 247), and on the United States' *Motion for Telephonic Status Conference*, filed January 10, 2013 (Doc. 310). For the reasons stated below, the Court has decided to use its inherent powers to vacate the criminal-contempt proceedings without prejudice, to terminate the appointment of CJA counsel, and to sanction the Melots and Byers for their egregious conduct in this case.

The Certifications arose from the United States' allegations that the Melots and Byers had conspired to commit a fraud on the Court by having Byers file a last-minute motion to intervene and to stay enforcement of the judgment in this case. The United States set out its allegations of conspiracy and fraud, with documentary support, in early June, 2012 - a month and a half before the hearing was scheduled. *See* Docs. 199; 204; 205. The Government also gave

notice to the Melots and Byers that it was going to subpoena email and telephone logs from Billy Melot's and Byer's respective prison facilities. *See* Docs. 209, 213. The Government gave notice of the list of the specific exhibits it intended to use at the hearing on July 13, 2012, *see* Doc. 225, and the Melots and Byers submitted their exhibit list on July 19, 2012, *see* Doc. 230. Katherine Melot hired an attorney to represent her. *See* Doc. 231. The Melots and Byers vigorously objected to admission of the Government's exhibits, but Magistrate Judge Lynch denied their motions for stay and to suppress evidence, and for protective orders. *See* June 28, 2012 Order (denying stay); July 12, 2012 Order (denying stay); July 19, 2012 Order (denying stay); July 20, 2012 Order (denying motion to continue hearing); August 6, 2012 Order (denying Byers' motion to suppress evidence and the Melots' motion for protective order). Byers filed objections to Magistrate Judge Lynch's Report and Recommendation on the motions to intervene and for stay, *see* Doc. 250, but, although the Melots filed several objections to Magistrate Judge Lynch's other orders, *see, e.g.* Docs. 249, 253, neither the Melots nor Byers objected to any of Magistrate Judge Lynch's Orders denying motions for stays or his Orders denying the motions to suppress the exhibits and for protective order. Those Orders, therefore, are not appealable. *See* Fed. R. Civ. P. 72(a).

The Court set forth much of the procedural and factual background supporting the Certifications in its September 20, 2012 Opinion adopting Magistrate Judge Lynch's Report and Recommendation to Byers' Motion to Intervene and his motion to stay the proceedings.

> Byers is an inmate now incarcerated in Nevada who has been giving the Melots legal advice and preparing legal documents for them in this case since he and Billy Melot were incarcerated together at Lea County Detention Center over two years ago. *See* Docs. 199, 242 and attached Exhibits. Two months after the Court entered a final judgment in favor of the United States that enforced its tax liens and authorized the sale of all of the Melots' property, including property

held in the names of several nominees/alter egos, *see* Doc. 173, Byers filed his motion to intervene, asserting that he has a legal claim to all of the Melots' properties resulting from "valid [debtor's] liens on all properties as well as Invested Interest." Doc. 195 at 1, 3. Although he is incarcerated in Nevada, Byers gave a residential address at 519 W. Copper Street in Hobbs, New Mexico, as his address, and the motion was mailed to the Court from Hobbs. *See id.* at 4,7. Byers did not attach any of the alleged liens to his motion, nor did he indicate what constitutes his "invested interest." In his application for a stay of enforcement of the final judgment filed four days later, Byers claimed that he has "superior liens in the amount of $653,333.62" and "holds titles to properties" on which the United States is entitled to foreclose. Doc. 197 at 1,2.

In its response to Byers' motion and application, the United States presented uncontroverted evidence that Byers is incarcerated in Nevada and serving two consecutive life sentences; that he had been incarcerated in New Mexico from 1993 until 2010, when he was extradited to Nevada; that he swore in 2010 that he had no assets and was indigent and was granted permission to proceed IFP in his federal habeas cases in this District; that he gave the Melots' address on Rose in Hobbs as his mailing address in August 2010; that he had not signed the motion or application in this case; that Byers gave Katherine Melot his power of attorney in March 2012 and she signed and mailed the motion and application; that in May 2012 Katherine arranged with a friend who lives at 519 W. Copper in Hobbs[1] to permit Melot to [use the] 519 W. Copper Street address to receive mail there; and that Katherine Melot signed and filed six liens listing Byers as the creditor against the Melots' property on May 24, 2012. *See* Doc. 199, Exs. A-I; 205, Exs. 1-3 & Attachments. Byers filed a reply in which he claimed to have "exerted his right to ownership" of the house on Copper Street "for over two (2) years," but that the financial affidavits he filled out did not require him to list any "contracts/deeds/titles that were not in his full control to liquidate or to (cash-in) on any Corporate Bonds that were issued to him." Doc. 208 at 1-2. The Court issued an order of reference authorizing Magistrate Judge Lynch to hold hearings on the motion to intervene and application for stay. *See* Doc. 200.

At the July 25, 2012 hearing, Byers appeared telephonically and requested withdrawal of his motion to intervene, stating that he "was unable to obtain documentary support for the motion." Doc. 242 at 2. Although Byers is not an attorney, he testified that his liens arise from an apparently oral agreement with Billy Melot in which Melot exchanged the value of the Melots' property for

---

[1] It appears that the Melots may actually own the property located at 519 W. Copper in Hobbs, and it may be one of the rental properties for which they receive rental income that Katherine and Billy Melot and Byers refer to in their emails to each other, *see, e.g.* Doc. 241, Ex. 15, but which Katherine Melot has failed to list as assets in her multiple applications to proceed IFP in this Court and in the Court of Appeals.

> Byers' jailhouse assistance in preparing court documents. *Id.* at 3. At the hearing, the United States presented additional, uncontroverted exhibits conclusively demonstrating that Byers was ghostwriting the Melots' motions and other filings; that Katherine Melot typed and mailed them for filing and relied on Byers' legal advice; that the Melots and Byers developed the lien scheme to delay foreclosure, and Katherine paid for filing the liens; and that they also were planning to "backdate" deeds to "sign[] ownership of the corporations" that held title to the Melots' property to Byers so that it would appear that Byers "own[ed] them from the beginning." Doc. 241, Exs. 14-17, 19, 35-42, 47 (letter from Katherine Melot to Byers regarding her recent efforts in "spen[ding] a fortune fixing up your place"), 41 (May 24, 2012 email from Billy to Katherine); and 42 (June 2, 2012 email from Billy to Katherine in which Billy Melot states that he and Byers "were planning on him living in one of our houses and setting up his legal work" when Byers got out of prison).
>
> Judge Lynch held that Billy Melot's appearance "was not required" at the hearing on Byers' motion to intervene, but that he could appear telephonically if he chose to do so. Doc. 203 at 1. Billy Melot did not appear at the hearing. Katherine Melot, who appeared in person, took no position on Byer's motion and invoked her Fifth-Amendment privilege against self-incrimination in response to every question the Government posed. *See* Doc. 236 at 2-4.

September 20, 2012 MOO at 1-4.

At the conclusion of the July 25, 2012 hearing, Magistrate Judge Lynch asked the Government if it sought sanctions, to which counsel for the Government responded that it did, including requiring the Melots and Byers to pay the Government's costs in responding to the recent motions and appearing for the hearing, and to sanction Byers for the unauthorized practice of law. *See* Doc. 236 at 4 (Clerk's Minutes of July 25, 2012 hearing). Magistrate Judge Lynch later determined that the undisputed evidence and testimony merited the filing of Certifications of Criminal Contempt against the Melots and Byers, and he ordered the United States to prosecute the cases. *See* Doc. 245 at 8; Doc. 246 at 5; Doc. 247 at 6. Magistrate Judge Lynch later appointed separate CJA counsel for Billy Melot, Katherine Melot, and Byers. *See* Docs. 264, 265.

The Budget Control Act of 2011, which became effective in March 2013, has significantly affected the federal judiciary's budget. For example, this District has now reduced the Court's criminal-hearing schedule on Fridays to every other Friday, except for mandatory first appearances before a magistrate judge, in an effort to reduce spending. *See* Admin. Order 13mc00004-11, filed April 11, 2013. The whole Court has also experienced cuts in staff, and every judge presides over a crushing civil and criminal case load. The recent delays in funding the Court's budget have further imposed financial burdens on the Court. I currently also am presiding over a death-penalty case.

Because Billy Melot and Stephen Byers have been incarcerated in facilities outside the state of New Mexico, the Court would have to incur significant expenses to have them transported to Albuquerque for a criminal-contempt hearing. And because the contempt proceedings are criminal in nature, and the Melots and Byers all claim that they are indigent, the Court appointed three separate attorneys whose fees for representing them at a hearing would be paid for out of the Court's limited CJA funds.

The Court has decided, therefore, to vacate the criminal-contempt proceedings and terminate the appointment of CJA counsel, and to consider what sanctions should be imposed against the Melots and Byers for their egregious behavior. As indicated above, the undisputed record is fully sufficient to find that sanctions are appropriate and necessary in this case. And although Billy Melot waived his right to appear telephonically for the July 25, 2012 hearing, he has vigorously contested the admissibility of many of the exhibits presented and discussed at that hearing, which clearly support sanctions, and all three individuals have had notice that sanctions are being considered, and an opportunity to rebut the evidence supporting sanctions.

In *Chambers v. NASCO, Inc.*, the Supreme Court held that a district court may "resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct," even when no specific statute or Rule specifically provides for such a sanction. 501 U.S. 32, 50 (1991). Court have often used their inherent power to sanction egregious, malicious, or fraudulent conduct by imposing appropriate sanctions. In *Mellott v. MSN Communications, Inc.*, for example, the district court, using its inherent powers, imposed a monetary sanction of $25,000 against an attorney who facilitated the plaintiff's egregious conduct in lying about the factual basis of her claims, falsifying documents, and otherwise perpetrating frauds on the Court. *See Mellott*, No. 12-1323, 513 Fed. App'x 753, 753-54, 2013 WL 1130998, *1-*2 (10th Cir. March 19, 2013). The Tenth Circuit affirmed, noting that the "defendant's request for sanctions . . . invoked the court's inherent power." *Id.* at 754. The Tenth Circuit noted that, when an individual is the subject of a request for sanctions or order finding sanctionable conduct, the only due process required before imposing sanctions is an opportunity to be heard, which "'does not require an oral or evidentiary hearing on the issue; the opportunity to fully brief the issue is sufficient to satisfy due process requirements.'" *Id.* (quoting *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 268 (10th Cir. 1995)).

The courts also regularly impose various other types of sanctions, such as filing restrictions and dismissal of claims or causes of action, as a consequence for the egregious conduct of filing fraudulent documents and lying to the Court or opposing parties, and for filing frivolous pleadings, engaging in dilatory tactics, or disobeying the rules and court orders. *See, e.g. Olsen v. Mapes*, 333 F.3d 1199, 1204 n.3 (10th Cir. 2003) (noting that Rule 41 is interpreted to permit courts to dismiss actions *sua sponte* for a plaintiff's failure to prosecute or to comply

with the rules of civil procedure or a court's orders); *Freeman v. Davis*, No. 10–1330, 414 Fed. App'x 163, 164, 2011 WL 692995, **1 (10th Cir. Mar. 1, 2011) (noting that litigant had been warned that "further repetitious or frivolous attempts to circumvent statutory restrictions . . . may result in the imposition of sanctions against him . . . . [which] may include dismissal, monetary sanctions, and restrictions on his ability to file pleadings in this court" and noting that the Tenth Circuit has "long held that where a party has engaged in a pattern of litigation activity which is manifestly abusive, restrictions are appropriate," based on the court's "inherent power to regulate federal dockets, promote judicial efficiency, and deter frivolous filings"). When, during the discovery process, a defendant abuses the litigation process by using improper and unfair delay tactics, a court may prohibit the offending party from "opposing designated claims," and render a default judgment against the defendant. *See* Fed. R. Civ. P. 37(b).

It is clear to the Court that the Melots' and Byers' fraudulent and dilatory actions were motivated by the Melots' desire to further delay the foreclosure proceedings as long as possible so that Katherine Melot may continue to occupy the Melots' large home and property worth several hundred thousand dollars that was purchased – along with many investment properties – during the two or more decades that the Melots have been refusing to pay income and excise taxes. The Court has concluded, therefore, that imposing the following sanctions is a reasonable response to the Melots' and Byers' fraudulent conduct. The Court will (i) require Katherine Melot and her children to immediately vacate all property that is the subject of these proceedings so that there will no longer be a reason for the Melots or anyone acting on their behalf to file fraudulent documents and requests for stays; (ii) strike the Melot's pending motions, responses to motions, and requests for stays; (iii) impose monetary sanctions against the Melots and Byers


by awarding the Government the costs it has requested; (iv) impose filing restrictions in this District against the Melots and Byers; and (iv) issue a permanent injunction prohibiting Byers from assisting other inmates or any other person with legal matters of any kind in this District unless he graduates from a school of law and is licensed to practice law.

  **IT IS ORDERED** that the three Certifications of Criminal Contempt [Docs. 245, 246, 247] are **VACATED**; that the appointments of Robert E Kinney and the Federal Public Defender's Office, Cori Ann Harbour-Valdez and The Harbour Law Firm, PC, and Leon Schydlower are terminated as of the date of the filing of this Order; that the Government's motion for a status conference [Doc. 310] is **DENIED** as moot; and that the Melot's pending motions [Docs. 359, 371, 392, 396 and 397], and their responses to the Government's pending motion [Docs. 386, 387] are **STRICKEN** from the record.

  **IT IS FURTHER ORDERED** that the Melots and Byers are jointly and severally liable for the Government's reasonable costs for defending against all of the Melots' and Byers' filings associated with Byers' motions to intervene and for stay, and for preparing for and appearing at the July 25, 2012 hearing on those matters, and that the Government shall submit the appropriate affidavits and supporting documents to support its costs within 10 days of the filing of this Order, including a reasonable amount associated with the work performed by its attorneys;

  **IT IS FURTHER ORDERED** that Katherine Melot and her children shall completely vacate the Rose Road property and any other properties that she may have control over within fifteen days of the filing of this Order;

  **IT IS FURTHER ORDERED** that neither the Melots nor Byers shall file any other documents or motions in this case other than a notice of appeal;

**IT IS FURTHER ORDERED** that Byers is prohibited from assisting any other person with any legal matter or otherwise attempting to engage in the practice of law in this District, and that the United States shall cause a copy of this Order to be submitted to the prison facility where Byers is currently incarcerated that shall be made a permanent part of his prison record.

_____
UNITED STATES DISTRICT JUDGE